**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | No. 12-57064 |
| Plaintiff - Appellee, | D.C. No. 8:09-cv-01324-CJC-RNB |
| v. | |
| COMMERCE PLANET, INC., a corporation; et al., | MEMORANDUM[*] |
| Defendants, | |
| And | |
| SUPERFLY ADVERTISING, INC., a Delaware corporation, FKA Morlex, Inc.; et al., | |
| Third-party-defendants, | |
| And | |
| CHARLES GUGLIUZZA, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California

---

[*]   This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Cormac J. Carney, District Judge, Presiding

Argued and Submitted February 9, 2015
Pasadena, California

Before: CALLAHAN, WATFORD, and OWENS, Circuit Judges.

**1.** The district court did not err in finding that Commerce Planet's marketing practices violated the Federal Trade Commission (FTC) Act.

Commerce Planet violated existing standards prohibiting deceptive and unfair practices in marketing its OnlineSupplier service. Contrary to Gugliuzza's contentions, the undisputed evidence established that Commerce Planet was on notice that it could not mislead consumers on material issues (deceptive practices), and could not engage in practices likely to cause substantial injury that consumers could not reasonably avoid and that did not provide countervailing benefits (unfair practices). That the FTC did not provide guidance specifically tailored to Commerce Planet's activities does not immunize the company from liability. Even if Commerce Planet's use of negative options was consistent with "standard industry practices," as Gugliuzza claims, a practice that is standard to a particular industry can still violate the FTC Act. *See, e.g.*, *FTC v. Cement Institute*, 333 U.S. 683, 688, 720–21 (1948).

That Commerce Planet allegedly had a low rate of consumer confusion is likewise not a defense to liability. Gugliuzza presented no affirmative evidence on which we can rely that supports his argument that Commerce Planet actually had a low rate of confusion. His only proffered evidence to that effect was the excluded testimony by a proposed expert, Dr. Kenneth Deal, about a consumer survey. The district court did not abuse its discretion in excluding Dr. Deal's testimony. Dr. Deal had not conducted the survey himself and Gugliuzza failed to otherwise demonstrate that the survey was "conducted according to accepted principles." *M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1087 (9th Cir. 2005) (quoting *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001)); *see Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1142–43 & n.8 (9th Cir. 1997).

Whether anyone could reasonably estimate Commerce Planet's actual rate of confusion is irrelevant. The FTC Act does not require a showing of actual deception; a showing that a practice is *likely* to deceive will suffice. *See FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006); *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095, 1102 n.33 (9th Cir. 1994). And the district court did not clearly err in finding that consumers were likely to be deceived. The negative option disclosure was buried in a thicket of "Terms and Conditions" accessible

primarily through a link on the web page, which appeared in small text in blue font on a blue background on an otherwise busy web page. Consumers testified to actually having been misled; the company had high credit card chargeback rates, which a Visa employee identified as caused in large part by misled consumers; expert testimony suggested that the web sites were likely to be materially misleading; and Commerce Planet's customer service manager stated that the company received a large volume of complaints from misled consumers.

**2.** The district did not clearly err in finding Gugliuzza personally liable for Commerce Planet's violations of the FTC Act. Gugliuzza was at least recklessly indifferent to the truth or falsity of the misrepresentations. *See FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009).[1] Customers filed thousands of complaints about OnlineSupplier every month, mostly because they believed they had signed up to receive a free kit, not a monthly membership. Gugliuzza not only had discussions about these complaints with the customer service manager, but also explicitly rejected suggested improvements to the disclosures. In addition, he quickly jettisoned the few improvements that were implemented—and did so because they "were a disaster" to Commerce Planet's sign-up numbers. That additional

---

[1] Gugliuzza does not dispute that he "participated directly in the deceptive acts or had the authority to control them." *Stefanchik*, 559 F.3d at 931 (emphasis omitted).

disclosures were a "disaster" to sales suggests that, without those disclosures, consumers were not adequately informed. Gugliuzza's knowledge that additional disclosures reduced sales supports the district court's finding that he was at least recklessly indifferent to the truth or falsity of the misrepresentations.[2]

**3.** The advice of counsel defense does not shield Gugliuzza from liability. First, advice of counsel is "'not a valid defense on the question of knowledge' required for individual liability." *FTC v. Grant Connect, LLC*, 763 F.3d 1094, 1102 (9th Cir. 2014) (quoting *Cyberspace.com*, 453 F.3d at 1202). Second, even if it were, the defense would not be available to Gugliuzza. The district court did not clearly err in finding that Gugiluzza had "acted as Commerce Planet's *de facto* legal counsel," and that he did not in fact accept his in-house counsel's advice when it was given. When in-house counsel expressed concerns about whether the web pages complied with the FTC Act and told Gugiluzza he would have to "do some research" in order to "give a real legal opinion," Gugliuzza did not rely on counsel's advice in any sense. Instead, he responded that "the pages [we]re fine," put his hands over his ears, and refused to discuss the matter further.

---

[2] So, too, does Gugliuzza's active involvement with OnlineSupplier's marketing efforts, as a high "degree of participation in business affairs is probative of knowledge." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1235 (9th Cir. 1999) (quoting *FTC v. Amy Travel Service, Inc.*, 875 F.2d 564, 574 (7th Cir. 1989)).

The district court's liability determination is **AFFIRMED.**