FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| IN RE CHARLES FRANCIS GUGLIUZZA, II, *Debtor*, | No. 15-55510 |
|  | D.C. No. 8:14-cv-01529-CJC |
| CHARLES FRANCIS GUGLIUZZA, II, *Appellant*, v. | |
| FEDERAL TRADE COMMISSION, *Appellee.* | OPINION |

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted December 7, 2016
Pasadena, California

Filed March 24, 2017

Before: Consuelo M. Callahan, Carlos T. Bea,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

## SUMMARY[*]

### Bankruptcy

Dismissing an appeal, the panel held that it lacked jurisdiction to review the district court's order, which reversed in part a bankruptcy court's grant of summary judgment against a bankruptcy debtor and remanded for further fact-finding in an adversary proceeding brought by the Federal Trade Commission.

The FTC sought a determination that a restitution debt arising from an FTC enforcement action was nondischargeable under 11 U.S.C. § 523(a)(2)(A). The district court held that the bankruptcy court correctly concluded that the debtor was collaterally estopped from relitigating four of the five elements necessary to prove nondischargeability under § 523(a)(2)(A), but had erred in holding that the debtor was collaterally estopped from relitigating the issue of his intent to deceive consumers. The district court affirmed in part, reversed in part, and remanded the case to the bankruptcy court for further fact-finding on the issue of the debtor's intent to deceive.

The panel held that it lacked jurisdiction under 28 U.S.C. § 1291 because the district court's judgment did not end the litigation on the merits. The panel lacked jurisdiction under 28 U.S.C. § 1292 because the district court did not certify its decision for interlocutory review.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that it also lacked jurisdiction under 28 U.S.C. § 158(d)(1), which gives courts of appeals jurisdiction of appeals from final bankruptcy decisions, judgments, orders, and decrees of district courts and bankruptcy appellate panels. The panel concluded that under *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686 (2015), and *Sahagun v. Landmark Fence Co. (In re Landmark Fence Co.)*, 801 F.3d 1099 (9th Cir. 2015), the district court's order did not alter the status quo or fix the rights and obligations of the parties. The panel held that *Bonner Mall P'ship v. U.S. Bancorp Mortgage Co. (In re Bonner Mall P'ship)*, 2 F.3d 899 (9th Cir. 1993) and its progeny—which held that, for purposes of § 158(d)(1), final decisions, judgments, orders, and decrees include district court or BAP decisions remanding a central issue to the bankruptcy court for further fact-finding so long as the appeal raises a purely legal question or the decision on appeal could materially aid the bankruptcy court in its decisionmaking process—were inconsistent with *Bullard* and *Landmark Fence* and therefore no longer binding.

---

## COUNSEL

Michael B. Reynolds (argued) and Todd E. Lundell, Snell & Wilmer LLP, Costa Mesa, California; Blaine H. Evanson, M. Sean Royall, and Theodore J. Boutrous, Jr., Gibson Dunn & Crutcher LLP, Los Angeles, California; for Appellant.

Michele Arington (argued), Kimberly Nelson, and Megan Bartley, Attorneys; Joel Marcus, Director of Litigation; Federal Trade Commission, Washington, D.C., for Appellee.

---

## OPINION

IKUTA, Circuit Judge:

Charles Gugliuzza appeals the district court's order reversing a bankruptcy court's grant of summary judgment and remanding for further fact-finding. We conclude that we lack jurisdiction and therefore dismiss the appeal.

I

The Federal Trade Commission (FTC) successfully brought an enforcement action against Charles Gugliuzza and his former company, Commerce Planet, alleging violations of Section 5 of the FTC Act, 15 U.S.C. § 45(a). *See FTC v. Commerce Planet, Inc.*, 878 F. Supp. 2d 1048 (C.D. Cal. 2012). In assessing Gugliuzza's liability, the district court relied on the test set forth by the FTC in *In re Cliffdale Assocs.*, 103 F.T.C. 110 (1984), which we have generally adopted, *see FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1994). Under this test, "an act or practice [is] deceptive if, first, there is a representation, omission, or practice that, second, is likely to mislead consumers acting reasonably under the circumstances, and third, the representation, omission, or practice is material." *Id.* (quoting *Cliffdale Assocs.*, 103 F.T.C. at 164–65). Applying this standard, the district court held that Commerce Planet had engaged in deceptive acts and further determined that Gugliuzza could be held individually liable for those violations. *See Commerce Planet, Inc.*, 878 F. Supp. 2d at 1055.[1] In addition to enjoining Gugliuzza from further violations of the FTC Act,

---

[1] We affirmed this liability determination on appeal. *See FTC v. Commerce Planet, Inc.*, 642 F. App'x 680, 683 (9th Cir. 2016).

the district court awarded the FTC $18.2 million in restitution.[2] *Id.* at 1092.

In the wake of this restitution award, Gugliuzza filed a voluntary petition for bankruptcy under Chapter 7 in November 2012. "Generally, a debtor is permitted to discharge all debts that arose before the filing of his bankruptcy petition," *Hawkins v. Franchise Tax Bd.*, 769 F.3d 662, 666 (9th Cir. 2014) (citing 11 U.S.C. § 727(b)), but "the Bankruptcy Code provides for certain exceptions to that general rule," *id.* (citing 11 U.S.C. § 523). One such exception is that debts obtained by "false pretenses, a false representation, or actual fraud" are not dischargeable. 11 U.S.C. § 523(a)(2)(A).[3] To establish nondischargeability

---

[2] We affirmed the district court's authority to enter the restitution order, but vacated the order and remanded because the district court did not "actually hold [Gugliuzza] jointly and severally liable for Commerce Planet's restitution obligations." *FTC v. Commerce Planet, Inc.*, 815 F.3d 593, 603 (9th Cir. 2016). On remand, the district court modified its order and held Gugliuzza jointly and severally liable for the restitution obligations.

[3] 11 U.S.C. § 523(a)(2)(A) provides, in pertinent part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

> > > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

under § 523(a)(2)(A), a creditor must prove five elements: "(1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct." *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000).

In bankruptcy court, the FTC commenced an adversary proceeding, which is "essentially [a] full civil lawsuit[] carried out under the umbrella of the bankruptcy case," *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1694 (2015), seeking a determination that Gugliuzza's restitution debt was nondischargeable under 11 U.S.C. § 523(a)(2)(A). The FTC moved for summary judgment, contending that *Commerce Planet*'s determination that Gugliuzza had engaged in deceptive practices for purposes of the FTC Act foreclosed him from relitigating the five elements necessary to establish that the debt was obtained by "false pretenses, a false representation, or actual fraud" such that it was not dischargeable under § 523(a)(2)(A). *See Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 872 (9th Cir. 2005) ("[C]ollateral estoppel principles . . . apply in discharge exception proceedings pursuant to § 523(a)." (quoting *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991))). The bankruptcy court granted the FTC's motion and entered judgment in the FTC's favor.

On appeal, the district court affirmed the bankruptcy court in part, reversed in part, and remanded. *See FTC v. Gugliuzza (In re Gugliuzza)*, 527 B.R. 370, 373 (C.D. Cal. 2015). It held that the bankruptcy court correctly concluded that Gugliuzza was collaterally estopped from relitigating four of the five elements necessary to prove nondischargeability under § 523(a)(2)(A) (specifically, the elements of misrepresentation, knowledge, justifiable reliance, and damages), but had erred in holding that Gugliuzza was collaterally estopped from relitigating the issue of his intent to deceive consumers. Accordingly, the district court remanded the case to the bankruptcy court for further fact-finding on the issue of Gugliuzza's intent to deceive. Gugliuzza timely appealed this order. He contends on appeal that the district court and bankruptcy court erred in holding that collateral estoppel precluded him from litigating the elements of misrepresentation, justifiable reliance, and damages.

## II

We must first consider whether we have jurisdiction to entertain Gugliuzza's appeal. *See Sahagun v. Landmark Fence Co. (In re Landmark Fence Co.)*, 801 F.3d 1099, 1102 (9th Cir. 2015). We have jurisdiction to determine our jurisdiction, *Bunyan v. United States (In re Bunyan)*, 354 F.3d 1149, 1152 (9th Cir. 2004), and consider the question de novo, *Silver Sage Partners, Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs)*, 339 F.3d 782, 787 (9th Cir. 2003).

A

We have authority to hear appeals in bankruptcy cases under three different jurisdiction-conferring provisions, 28 U.S.C. §§ 1291, 1292, and 158(d)(1).

First, 28 U.S.C. § 1291 provides: "[t]he courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . , except where a direct review may be had in the Supreme Court." 28 U.S.C. § 1291. This section gives us "jurisdiction over appeals from 'final decisions by the district courts' acting in any capacity." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992).

In the bankruptcy context, we have jurisdiction under § 1291 over appeals from rulings made by a district court when it presides directly over a bankruptcy case. *See, e.g.*, *Klenske v. Goo (In re Manoa Fin. Co.)*, 781 F.2d 1370, 1372 (9th Cir. 1986). We also have jurisdiction under § 1291 over appeals taken from "final decisions" made by a district court when it sits in a bankruptcy-appellate capacity. *See Germain*, 503 U.S. at 253. While district courts normally do not act as appellate bodies, they may do so in the bankruptcy context. Congress gave district courts original jurisdiction over bankruptcy proceedings, *see* 28 U.S.C. § 1334, but also authorized them to refer bankruptcy cases to bankruptcy judges in the first instance, *see id.* § 157. In fact, all districts have adopted "a general order of reference to send all bankruptcy cases to the bankruptcy judges for the district." *Schulman v. Cal. State Water Res. Control Bd. (In re Lazar)*, 200 B.R. 358, 366 (Bankr. C.D. Cal. 1996). After making such a reference, district courts may hear appeals "from final

judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings."[4]   28 U.S.C. § 158(a). Section 158(a) also gives district courts, sitting in an

---

[4] 28 U.S.C. § 158(a) provides, in full:

> The district courts of the United States shall have jurisdiction to hear appeals
>
> > (1) from final judgments, orders, and decrees;
> >
> > (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and
> >
> > (3) *with leave of the court, from other interlocutory orders and decrees*;
>
> and, *with leave of the court, from interlocutory orders and decrees*, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving. (Emphasis added.)

The repetition of the phrase "with leave of the court, from . . . interlocutory orders and decrees" appears to be an error introduced by the Bankruptcy Reform Act of 1994. As originally enacted in 1984, § 158(a) gave district courts jurisdiction to "hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees . . . ." *See* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, § 104(a), 98 Stat. 333, 341. In the 1994 Act, Congress amended this provision to add the language of what is now § 158(a)(1)–(3), which includes the phrase: "with leave of the court, from other interlocutory orders and decrees," *see* Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 102, 108 Stat. 4106, 4108. This redundancy does not affect the subsection's meaning.

appellate capacity, jurisdiction over "interlocutory orders and decrees."[5]

The scope of our jurisdiction under § 1291 is the same for all district court rulings. *See Klestadt & Winters, LLP v. Cangelosi*, 672 F.3d 809, 815 (9th Cir. 2012). Regardless of context, in determining whether the district court decision is final under § 1291, "we ask whether the decision presented for review 'ends the litigation on the merits and leaves nothing for the district court to do but execute the judgment.'" *Congrejo Invs., LLC v. Mann (In re Bender)*, 586 F.3d 1159, 1163 (9th Cir. 2009) (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373 (1981)).

A second source of jurisdiction is provided by § 1292, which authorizes appellate courts to hear appeals taken from all interlocutory orders of specified types, 28 U.S.C. § 1292(a), as well as appeals of interlocutory orders that are certified by the district court to meet specified criteria, *id.* § 1292(b). This jurisdiction includes the authority to hear appeals from a district court's interlocutory orders issued in a bankruptcy-appellate capacity. *See Germain*, 503 U.S. at 254 ("So long as a party to a proceeding or case in bankruptcy meets the conditions imposed by § 1292, a court of appeals may rely on that statute as a basis for jurisdiction.").

---

[5] Generally, an interlocutory order or decree may be appealed only "with leave of the court." 28 U.S.C. § 158(a)(3). However, an appeal may be taken as of right from an interlocutory order and decree issued under 11 U.S.C. § 1121(d), which provides for modification of the exclusivity period in which only the debtor may propose a reorganization plan. 28 U.S.C. § 158(a)(2); *see Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 438–39 (1999).

In contrast to the grants of general jurisdiction under 28 U.S.C. § 1291 and § 1292, 28 U.S.C. § 158(d) gives us jurisdiction specific to bankruptcy decisions of district courts and decisions of three-judge bankruptcy appellate panels (or BAPs).[6] Under § 158(d)(1), "[t]he courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) [defining the district courts' jurisdiction] and (b) [defining the jurisdiction of the bankruptcy appellate panels] of this section."[7] This language limits our appellate jurisdiction under § 158(d)(1) to decisions, judgments, orders, and decrees that are "final"; we have no authority under section 158(d)(1) to consider interlocutory orders and decrees. *See Germain*, 503 U.S. at 252 (holding that "§ 158 did not confer jurisdiction on the Court of Appeals" over an interlocutory order entered by a district court, as neither § 158(d)(1) "nor any other part of § 158 mentions interlocutory orders entered by the district courts in bankruptcy").[8]

---

[6] Additionally, § 158(d) gives us jurisdiction to hear direct appeals from a "judgment, order, or decree" of a bankruptcy court, bypassing the district court or the BAP, if we receive the appropriate certification from the court involved or all of the parties. *See* 28 U.S.C. § 158(d)(2).

[7] Section 158(b) (which provides for the establishment of a bankruptcy appellate panel) grants the BAP jurisdiction to hear appeals over "final judgments, orders, and decrees" as well as over "interlocutory orders and decrees" to the same extent as district courts sitting as appellate bodies in bankruptcy. *See* 28 U.S.C. § 158(b)(1). Accordingly, our jurisdiction under § 158(d) is the same whether the decision was entered by the BAP or, as here, by a district court.

[8] As noted in *Germain*, the jurisdiction provided to the federal circuit courts under § 1291 from final decisions of the district courts acting in any capacity overlaps with the jurisdiction conferred by § 158(d). This overlap notwithstanding, *Germain* held that interpreting § 1291 as

B

The Supreme Court has recently provided guidance on how to interpret the scope of jurisdiction granted by § 158. *See Bullard*, 135 S. Ct. 1686. In *Bullard*, a bankruptcy court declined to confirm a debtor's proposed plan of reorganization in a Chapter 13 case. *Id.* at 1691. The debtor appealed the denial to the First Circuit's BAP, which "concluded that the order denying plan confirmation was not final because [the debtor] was 'free to propose an alternate plan.'" *Id.* (quoting *Bullard v. Hyde Park Sav. Bank (In re Bullard)*, 494 B.R. 92, 95 (1st Cir. BAP 2013)). The BAP therefore held that it did not have jurisdiction under § 158(a)(1), which grants jurisdiction over only "final judgments, orders, and decrees" of bankruptcy judges entered in cases and proceedings. Nonetheless, the BAP granted the debtor leave to appeal an interlocutory order under 28 U.S.C. § 158(a)(3) and affirmed the bankruptcy court. *Id.*

The debtor then appealed to the First Circuit, which dismissed the appeal for lack of jurisdiction. *Id.* The First Circuit reasoned that the denial of a plan confirmation was not a final order, so it lacked jurisdiction under § 158(d)(1), and the BAP had not certified the interlocutory order for review, so it also lacked jurisdiction under § 158(d)(2). *Id.*

On appeal to the Supreme Court, the debtor contended that the First Circuit had jurisdiction under § 158(d) because orders denying confirmation should be considered final

conferring the same jurisdiction as § 158(d) over final decisions of district courts sitting as appellate bodies did not make § 1291 superfluous, because § 158(d) "also confers jurisdiction over final decisions of the appellate panels in bankruptcy acting under § 158(b)." 503 U.S. at 253.

orders. The Supreme Court rejected this argument. According to the Court, the bankruptcy court's order denying plan confirmation was not a final order entered in a proceeding. Therefore, the First Circuit lacked jurisdiction to consider it. *Bullard* explained that in "ordinary civil litigation, a case in federal district court culminates in a 'final decisio[n],' a ruling 'by which a district court disassociates itself from a case.'" *Id.* (alteration in original) (quoting 28 U.S.C. § 1291; *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 42 (1995)). As a general rule, a party can appeal as of right only from the final decision that ends the case. *Id.* "This rule reflects the conclusion that '[p]ermitting piecemeal, prejudgment appeals . . . undermines efficient judicial administration and encroaches upon the prerogatives of district court judges, who play a special role in managing ongoing litigation.'" *Id.* at 1691–92 (alterations in original) (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106, (2009)).

The Court acknowledged that the "rules are different in bankruptcy," but clarified that this difference arises because "[a] bankruptcy case involves 'an aggregation of individual controversies,' many of which would exist as stand-alone lawsuits but for the bankrupt status of the debtor." *Id.* at 1692 (quoting 1 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 5.08[1][b], at 5-42 (16th ed. 2014)). That is, because bankruptcy cases generally involve multiple parties asserting a range of different claims, many of which are litigated in discrete proceedings (including adversary actions), "Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case." *Id.* (quoting *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 657 n.3 (2006)).

*Bullard* then provided guidance on how to discern whether a particular order was "immediately appealable" under § 158 by virtue of being final within a proceeding. *Id.* According to the Court, the relevant proceeding is one that results in a final order that "alters the status quo and fixes the rights and obligations of the parties." *Id.* Plan confirmation satisfies this definition: "[w]hen the bankruptcy court confirms a plan, its terms become binding on debtor and creditor alike" with preclusive effect, often resulting in the vesting of property in the debtor and the distribution of funds to creditors. *Id.* at 1692; *see id.* at 1695 (holding that a plan confirmation order is appealable because it "alters the legal relationships among the parties"). Denial of confirmation followed by dismissal of the case also satisfies this definition, as "the consequences are similarly significant": it "dooms the possibility of a discharge" and lifts the automatic stay. *Id.* at 1692–93. By contrast, "[a]n order denying confirmation is not final, so long as it leaves the debtor free to propose another plan." *Id.* at 1692. Unlike the dramatic consequences flowing from either confirmation or dismissal, denial with leave to amend "changes little," as "[t]he automatic stay persists" and "[t]he possibility of discharge lives on." *Id.* at 1693.

The Supreme Court then addressed the debtor's argument that a distinct proceeding was conducted "[e]ach time the bankruptcy court reviews a proposed plan" such that the bankruptcy court's order denying confirmation was therefore a final order within a proceeding for purposes of § 158(a), regardless whether the plan was confirmed or rejected. *Id.* at 1692. Rejecting this argument, *Bullard* reasoned that such an approach "[did] not make much sense" because it defined "the pertinent proceeding so narrowly that the requirement of finality would do little work as a meaningful constraint on the

availability of appellate review." *Id.* at 1693. By vastly expanding the class of immediately appealable orders, the debtor's proposal gave rise to an unacceptable risk of piecemeal appeals, given that "debtors may often view . . . the prospect of appeals as important leverage in dealing with creditors." *Id.* Judicial efficiency would also suffer under the debtor's proposal. Given that "each climb up the appellate ladder and slide down the chute can take more than a year," expanding the class of appealable orders would create precisely the "delays and inefficiencies" that finality rules sought to prevent in the first instance. *Id.*

For the same reason, the Court rejected the government's argument that "an order resolving any contested matter is final and immediately appealable." *Id.* at 1694 (emphasis omitted). *Bullard* explained that "the list of contested matters is 'endless' and covers all sorts of minor disagreements." *Id.* (quoting 10 Resnick & Sommer, Collier on Bankruptcy ¶ 9014.01, at 9014-3). "The concept of finality cannot stretch to cover, for example, an order resolving a disputed request for an extension of time." *Id.* The asymmetry produced by the Court's analysis (plan confirmation is appealable as a final order while plan denial is not) was of little import. As *Bullard* explained, "it is of course quite common for the finality of a decision to depend on which way the decision goes." *Id*. at 1694. For instance, "[a]n order granting a motion for summary judgment is final; an order denying such a motion is not." *Id*.

The Court acknowledged that sometimes "a question will be important enough that it should be addressed immediately." *Id.* at 1695. Indeed, the Court noted that the issue in *Bullard* "could well fit the bill" because it "presented a pure question of law that had divided bankruptcy courts in

the First Circuit and would make a substantial financial difference to the parties." *Id.* But neither the significance of the issue nor its purely legal nature warranted a more flexible finality standard; the availability of interlocutory review, such as that provided under § 158(d)(2) and § 1292, was sufficient to address this concern. *Id.*

In sum, *Bullard* concluded that an order ending a proceeding in a bankruptcy case is immediately appealable if the order "alters the status quo and fixes the rights and obligations of the parties," *id.* at 1692, or "alters the legal relationships among the parties," *id.* at 1695. This interpretation of finality in bankruptcy cases determines the scope of the district court and BAP's authority to hear appeals "from final judgments, orders, and decrees" under § 158(a)(1) as well as our authority to hear "appeals from all final decisions, judgments, orders, and decrees" of bankruptcy judges entered by the district court and BAP under § 158(d)(1), which are governed by the same constraints. *See Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007) ("[I]dentical words and phrases within the same statute should normally be given the same meaning . . . ."); *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995) ("[O]perative words have a consistent meaning throughout . . . .").

C

Our approach to determining jurisdiction under § 158(d) is generally consistent with *Bullard*, as we have explained in our post-*Bullard* decisions. *See Eden Place, LLC v. Perl (In re Perl)*, 811 F.3d 1120 (9th Cir. 2016); *In re Landmark Fence*, 801 F.3d 1099. Just as *Bullard* held that "[t]he rules are different in bankruptcy" because a bankruptcy case

involves "an aggregation of individual controversies," 135 S. Ct. at 1692, we have long recognized that certain bankruptcy orders are appealable even if they do not conclude the entire bankruptcy case, and thus are "technically interlocutory," *In re Perl*, 811 F.3d at 1125 n.3 (quoting *Alexander v. Compton (In re Bonham)*, 229 F.3d 750, 761 (9th Cir. 2000)); *see also Four Seas Ctr., Ltd. v. Davres, Inc. (In re Four Seas Ctr., Ltd.)*, 754 F.2d 1416, 1418 (9th Cir. 1985) (citing "an order entirely terminating an adversary proceeding" as an example of an immediately appealable order).[9]   Consistent with *Bullard*'s ruling that § 158 provides jurisdiction over orders in bankruptcy cases that alter "the legal relationships among the parties," 135 S. Ct. at 1695, we have looked "to whether the bankruptcy court's decision: '1) resolves and seriously affects substantive rights and 2) finally determines the discrete issue to which it is addressed'" in determining whether a particular bankruptcy court order is final, *In re Perl*, 811 F.3d at 1126 (quoting *SS Farms, LLC v. Sharp (In re SK Foods, L.P.*), 676 F.3d 798, 802 (9th Cir. 2012)). When the district court (or BAP) affirms or reverses such a decision, we have considered it to be final and immediately appealable. *Id.*

By contrast, when an appeal is taken from a district court or BAP ruling that remands the case for further proceedings in the bankruptcy court, we have applied a four-factor test, considering "(1) the need to avoid piecemeal litigation; (2) judicial efficiency; (3) the systemic interest in preserving

---

[9] *In re Four Seas Center* considered the scope of our jurisdiction under a predecessor to § 158, 28 U.S.C. § 1293.  *See* 754 F.3d at 1418. However, "we have held that decisions regarding finality under § 1293 are applicable to cases arising under § 158," *Klestadt & Winters*, 672 F.3d at 814 n.4.

the bankruptcy court's role as the finder of fact; and (4) whether delaying review would cause either party irreparable harm." *Id.* at 1126 (quoting *In re Landmark Fence*, 801 F.3d at 1102). As in *Bullard*, these factors direct us to avoid piecemeal appeals and multiple "climb[s] up the appellate ladder and slide[s] down the chute" and the "delays and inefficiencies" that result. 135 S. Ct. at 1693. Applying this four-factor standard, we have held that "a district court order that includes a remand to the bankruptcy court with explicit instructions to engage in 'further fact-finding'" is not immediately appealable. *In re Landmark Fence*, 801 F.3d at 1101.

In *Landmark Fence*, our leading post-*Bullard* decision, a district court held that a bankruptcy court had applied an incorrect legal standard for assessing an element of damages and remanded for "additional fact finding." *Id.* at 1102. On appeal, we concluded that we lacked jurisdiction over the district court's order. *Id.* at 1101. Most important, we held that the first factor, "the risk of piecemeal litigation" weighed heavily in favor of the conclusion that the district court's order was not final: "When an intermediate appellate court remands a case to the bankruptcy court, the appellate process likely will be much shorter if we decline jurisdiction and await ultimate review of all the combined issues." *Id.* at 1103 (quoting *Stanley v. Crossland, Crossland, Chambers, MacArthur & Lastreto (In re Lakeshore Vill. Resort, Ltd.)*, 81 F.3d 103, 106 (9th Cir. 1996)). With respect to the second factor, we rejected the appellants' argument that judicial efficiency would be enhanced by asserting jurisdiction because our review of the merits had the potential to end the litigation. *Id.* Rather, we held that we should "eschew a 'jurisdictional inquiry that requires us to decide the merits of the appeal.'" *Id.* (quoting *Vylene Enters., Inc. v. Naugles,*

*Inc. (In re Vylene Enters.)*, 968 F.2d 887, 891 (9th Cir. 1992)). *Landmark Fence*'s articulation of this test is consistent with a long line of cases holding that when a district court "remands for factual determinations on a central issue, its order is not final and we lack jurisdiction to review the order." *In re Vylene Enters.*, 968 F.2d at 895 (determining that a district court's remand to the bankruptcy court for factual determinations on a central issue was not final after considering the four factors applied in *Landmark Fence*); *see also U.S. Bank N.A. v. Vill. at Lakeridge, LLC (In re Vill. at Lakeridge, LLC)*, 814 F.3d 993, 998 n.7 (9th Cir. 2016) ("[T]he BAP's decision as issued was not final, because . . . it also remanded for discovery to allow factual determinations [on a central issue].");  *King v. Stanton (In re Stanton)*, 766 F.2d 1283, 1287 (9th Cir. 1985) (noting that "when the BAP *remands* for further factual findings related to a central issue raised on appeal, that order is not final, and we lack jurisdiction"); *Dental Capital Leasing Corp. v. Martinez (In re Martinez)*, 721 F.2d 262, 265 (9th Cir. 1983) (holding that because the § 1291 finality standards apply "to remands for factual determinations in the bankruptcy context," and only "final decisions" of BAPs can be appealed to the appellate court, we lack jurisdiction over "a remand to the bankruptcy court for clarification of a central issue of the case").

We have departed from this general rule in situations "where the district court's remand order is limited to 'purely mechanical or computational task[s] such that the proceedings on remand are highly unlikely to generate a new appeal.'" *In re Landmark Fence*, 801 F.3d at 1103 (alteration in original) (quoting *Saxman v. Educ. Credit Mgmt. Corp. (In re Saxman)*, 325 F.3d 1168, 1172 (9th Cir. 2003)); *see also Farm Credit Bank of Spokane v. Fowler (In re Fowler)*,

903 F.2d 694, 695–96 (9th Cir. 1990) (holding that where the district court remanded to the bankruptcy court only for the ministerial function of applying the correct interest rate, the district court order was sufficiently final to be immediately appealable.).

D

Gugliuzza argues that in evaluating whether the district court's order qualifies as a final order, we are not bound by *Bullard* and *Landmark Fence*, but should apply a different line of cases beginning with *Bonner Mall Partnership v. U.S. Bancorp Mortgage Co. (In re Bonner Mall Partnership)*, 2 F.3d 899 (9th Cir. 1993). In *Bonner Mall*, a creditor moved for relief from the automatic stay in order to foreclose on secured property owned by the debtor, who had filed a proposed reorganization plan. *Id.* at 902. The debtor argued that relief from the automatic stay was not warranted, as its reorganization plan was confirmable based on the theory that the owners of the company could retain some of their equity in the company under an exception (called the "new value exception") to a bankruptcy rule that would have otherwise prohibited such treatment of equity holders. *Id.* The creditor argued that the new value exception had not survived the enactment of the Bankruptcy Code in 1978, and that even if the exception had survived, the plan was unconfirmable. *Id.* Agreeing with the creditor, the bankruptcy court held that the enactment of the Bankruptcy Code had eliminated the new value exception and accordingly granted the creditor's motion for relief. *Id.* The district court reversed, holding that the new value exception remained in force, and therefore remanded to the bankruptcy court for further proceedings as to the confirmability of the debtor's plan. *Id.* at 902–03.

Straying from our long line of cases holding that an order remanding "for factual determinations on a central issue" is not final, *see In re Vylene Enters.*, 968 F.2d at 895, we announced the new rule that we have jurisdiction "even though a district court has remanded a matter for factual findings on a central issue if that issue is *legal* in nature and its resolution either 1) could dispose of the case or proceeding and obviate the need for fact finding; or 2) would materially aid the bankruptcy court in reaching its disposition on remand." *In re Bonner Mall*, 2 F.3d at 904 (citing *In re Stanton*, 766 F.2d at 1288 n.8). Applying this rule to the case at hand, we determined that "[t]he central question is a legal one that is clearly potentially dispositive." *Id.* Accordingly, we held that the first prong of our new test applied and asserted jurisdiction over the appeal. *Id.* at 904–05.

We subsequently asserted jurisdiction over interlocutory remand orders under the second prong of the *Bonner Mall* test: whether the remand would "materially aid" the bankruptcy court in considering a factual issue. In *Dawson v. Washington Mutual Bank, F.A. (In re Dawson)*, for instance, two debtors filed an adversary action against a creditor claiming that the creditor had violated the automatic stay by foreclosing on property owned by the debtors' relatives. 390 F.3d 1139, 1144 (9th Cir. 2004). The debtors claimed they had an interest in the property pursuant to a written agreement with those relatives, and sought emotional distress damages caused by the foreclosure. *Id.* The bankruptcy court held (among other things) that the agreement did not give the debtors any interest in the property and therefore the creditor did not violate the automatic stay. *Id.* The district court affirmed part of the bankruptcy court's order, but reversed on one issue: it held that the agreement *might* have given the debtors an interest in the property, and

remanded to the bankruptcy court for factual findings necessary to make that determination, including whether the conditions precedent in the property agreement had been fulfilled. *Id.* at 1144–45.

In considering whether we had jurisdiction to hear an appeal from the district court's order, we acknowledged that the "district court reversed the bankruptcy [court] on a central issue in the case . . . and remanded the case for further factual findings." *Id.* at 1145. Nevertheless, we noted that the case raised a legal question: "When, if ever, are damages for emotional distress recoverable under 11 U.S.C. § 362(h) for a violation of the automatic stay?" *Id.* While recognizing that "[o]ur answer will not obviate the need for all further fact-finding," we concluded that our resolution of this question would "materially aid the bankruptcy court in reaching its disposition on remand" (the second prong of the *Bonner Mall* test), and therefore asserted jurisdiction. *Id.* at 1145–46; *see also Meyer v. U.S. Trustee (In re Scholz)*, 699 F.3d 1167, 1170–71 (9th Cir. 2012) (citing *In re Dawson*, 390 F.3d at 1145–46).

We went even further in *Price v. Lehtinen (In re Lehtinen)*, in which we indicated that we may assert jurisdiction over an appeal of an interlocutory BAP order whenever "the appeal concerns primarily a question of law." 564 F.3d 1052, 1057 (9th Cir. 2009) (quoting *DeMarah v. United States (In re DeMarah)*, 62 F.3d 1248, 1250 (9th Cir. 1995)). In *Lehtinen*, a bankruptcy court imposed sanctions on the debtor's counsel, including disgorgement of attorneys' fees and suspension from practicing before the bankruptcy court for three months. *Id.* The BAP held that the bankruptcy court had not abused its discretion in deciding to impose sanctions, but the sanction order did not clearly

reflect that the court had considered the relevant factors. *Id.* Therefore, the BAP vacated the suspension "and remanded to the bankruptcy court for consideration of the American Bar Association Standards." *Id.* On appeal, we acknowledged that "there is some question as to the finality of the BAP's decision," but nevertheless summarily concluded that "[b]ecause this is a purely legal question, we have jurisdiction." *Id.*

In sum, under *Bonner Mall* and its progeny, we have determined that "final decisions, judgments, orders, and decrees" for purposes of our jurisdiction under § 158(d) include district court or BAP decisions remanding a central issue to the bankruptcy court for further fact-finding so long as the appeal raises a "purely legal question" or our decision on appeal could "materially aid" the bankruptcy court in its decisionmaking process.

E

*Bullard* and *Landmark Fence* clearly limit the applicability of the *Bonner Mall* line of cases. *Bullard* provides that orders that are technically interlocutory are "final" for purposes of § 158 only when they "finally dispose of [a] discrete dispute[] within the larger case," 135 S. Ct. at 1692 (quoting *Howard Delivery Serv.*, 547 U.S. at 657 n.3). A decision that remands a case for further fact-finding will rarely have this degree of finality, unless the remand order is limited to ministerial tasks, *see, e.g.*, *In re Fowler*, 903 F.2d at 695–96. Further, *Bullard* expressly rejected the argument that a decision should be deemed final because it "presented a pure question of law" that was important to the parties, reasoning that "there are several mechanisms for interlocutory review to address such cases." 135 S. Ct. at

1695; *see also In re Landmark Fence*, 801 F.3d at 1103 (rejecting the contention that "the issues in the appeal [are] purely matters of law" based on "the language of the order on appeal," which included "explicit directions for the bankruptcy court to engage in 'further fact-finding'").

Finally, although the Supreme Court gave weight to considerations regarding the efficiency of the judicial process, it chose not to adopt a case-by-case approach to this issue. Rather than evaluate whether the appeal of a specific ruling would be efficient in a particular case, the Court adopted the general principle that only decisions that alter the status quo or fix the parties' rights and obligations could be appealed.[10] *Bullard*, 135 S. Ct. at 1692. The Court focused on ensuring "a meaningful constraint on the availability of appellate review" as opposed to expanding the universe of appealable interlocutory orders. *Id.* at 1693. To the extent *Bonner Mall* suggests we may peek at the merits in order to determine whether we have jurisdiction (i.e., because we have determined that our resolution of the legal issue would dispose of the case without a need for further fact-finding, or would correct an error by the district court and thus assist the bankruptcy court on remand), it is inconsistent with *Bullard* and our post-*Bullard* precedent. As *Landmark Fence* put it, we must "eschew a 'jurisdictional inquiry that requires us to decide the merits of the appeal.'" 801 F.3d at 1103 (quoting *In re Vylene Enters.*, 968 F.2d at 891). Regardless whether it

---

[10] Indeed, *Bullard* could have considered the judicial efficiencies gained had the appellate court taken jurisdiction of the debtor's appeal and ruled that the debtor's plan should have been confirmed. Such a favorable ruling would have concluded the proceedings, and the debtor could have avoided additional efforts to revise his plan. Instead, *Bullard* noted that if the appellate court affirmed the *denial* of the plan, then the debtor could appeal each subsequent plan that was denied. 135 S. Ct. at 1693.

would be judicially efficient to consider a reversal of a summary judgment order, "[a]n order granting a motion for summary judgment is final; an order denying such a motion is not." *Bullard*, 135 S. Ct. at 1694. *Bullard* made clear that our analysis of whether an order is "final" is different in bankruptcy only to the extent a "final" order under § 158 may terminate a discrete proceeding in bankruptcy, rather than the entire bankruptcy case. *See* 135 S. Ct. at 1692.

Accordingly, to the extent *Bonner Mall* holds that we have jurisdiction over an interlocutory order in a bankruptcy case because ruling on a legal issue could "dispose of the case" or "aid the bankruptcy court in reaching its disposition," *In re Bonner Mall*, 2 F.3d at 904, or merely because the appeal involves "a purely legal question," *In re Lehtinen*, 564 F.3d at 1057, it is inconsistent with *Bullard* and therefore no longer binding. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc) (where a "prior decision may have been undercut by higher authority to such an extent that it has been effectively overruled by such higher authority," it "is no longer binding on district judges and three-judge panels of this court"); *see also In re Vylene Enters.*, 968 F.2d at 895 (when a district court "remands for factual determinations on a central issue, its order is not final and we lack jurisdiction to review the order."). Gugliuzza's reliance on *Bonner Mall* and its progeny is therefore unavailing.

## III

We now apply these principles to this case, and consider whether we have jurisdiction over the district court's order reversing in part and remanding to the bankruptcy court to determine whether Gugliuzza had an intent to deceive.

We have no difficulty concluding that we lack jurisdiction under §§ 1291 and 1292. We do not have jurisdiction under § 1291 because the district court's order did not "end[] the litigation on the merits and leave[] nothing for the district court to do but execute the judgment.'" *In re Bender*, 586 F.3d at 1163 (quoting *Firestone Tire*, 449 U.S. at 373). We also lack jurisdiction under § 1292 because the district court did not certify its decision for interlocutory review.

We next turn to the question whether we have jurisdiction under § 158(d)(1). The district court's decision did not end the bankruptcy case as a whole, but as noted in *Bullard*, a "technically interlocutory" ruling can be deemed to be a final order in a bankruptcy case. *See In re Perl*, 811 F.3d at 1125 n.3. But here, the district court's ruling did not end the discrete proceeding before it, namely the FTC's adversary action. The main issue raised in the FTC's adversary action is whether Gugliuzza's restitution debt to the FTC can be discharged in Gugliuzza's bankruptcy, or whether that debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A). Rather than resolving this issue, the district court remanded the case to the bankruptcy court for fact-finding on a central issue. As a result, the district court's decision did not "alter[] the status quo" or "fix[] the rights and obligations of the parties." *Bullard*, 135 S. Ct. at 1692. Like the denial of the plan confirmation in *Bullard*, the district court's ruling "changes little." *Id.* at 1693. Because the possibility that Gugliuzza's restitution judgment may be discharged in bankruptcy lives on, we must conclude, as indicated in *Bullard*, that "'[f]inal' does not describe this state of affairs." *Id.* As the Supreme Court memorably put it, "It ain't over till it's over," and the nondischargeability dispute here simply "ain't over." *Id.*

*Landmark Fence* likewise requires this conclusion. As in that case, "the risk of piecemeal litigation is significant" here. 801 F.3d at 1103. Our intrusion into this matter would fragment the adversary proceeding between the FTC and Gugliuzza "carried out under the umbrella of the bankruptcy case." *Bullard*, 135 S. Ct. at 1694. The other factors considered in *Landmark Fence* likewise weigh against our jurisdiction. Efficiency is best served by our review of the district court's resolution of the dispute between the parties as a whole (i.e., in this case, whether Gugliuzza's restitution debt is dischargeable in bankruptcy under § 523(a)(2)(A)), not our review of the individual elements of a dispute. Any efficiency gained by the potential for clarification of the scope of the bankruptcy court's fact-finding mission on remand is outweighed by the near certainty of piecemeal appeals that result, especially given that this argument could be made with respect to interim review of an "endless" list of matters. *Id.* Further, the bankruptcy court's fact-finding role is best preserved by allowing the remand to run its course, particularly since the bankruptcy court's fact-finding on the issue of intent may result in the conclusion that the restitution debt is nondischargeable. *See In re Stanton*, 766 F.2d at 1287 ("[I]f the BAP [or district court] remands for factual development and we take jurisdiction before that process is concluded, we interfere with the bankruptcy court's fact-finding role."). As *Bullard* held, it is not sensible to stretch the concept of finality so far that "the requirement of finality would do little work as a meaningful constraint on the availability of appellate review." 135 S. Ct. at 1693.

The bankruptcy court's task on remand here, to determine whether Gugliuzza had the requisite intent to deceive, is not a mere "mechanical or computational task[] such that the proceedings on remand are highly unlikely to generate a new

appeal." *In re Landmark Fence*, 801 F.3d at 1103 (quoting *In re Saxman*, 325 F.3d at 1172). Therefore, this case does not fall into the ministerial exception to our rule that, when "an intermediate appellate court remands a case to the bankruptcy court," we should "decline jurisdiction and await ultimate review of all the combined issues." *Id.* (quoting *In re Lakeshore Vill. Resort*, 81 F.3d at 106).

Moreover, it is doubtful that an interlocutory district court order can cause irreparable harm in light of the "parties' rights and obligations remain[ing] unsettled," *Bullard*, 135 S. Ct. at 1693, and the availability of mechanisms for interlocutory review, *see id.* at 1695–96. Indeed, Gugliuzza has conceded the lack of irreparable harm in this case.

Finally, we reject Gugliuzza's argument that because the issues on appeal in this case are purely legal in nature, and our disposition of these issues could aid the bankruptcy court by allowing it to aggregate all necessary fact-finding into a single proceeding, the district court's order should be deemed "final" for purposes of § 158(d) under *Bonner Mall*. The decision by the district court in this case does not mark the conclusion of a discrete proceeding or fix the rights and obligations of any party, *Bullard*, 135 S. Ct. at 1692, and otherwise does not meet the standards set forth in *Landmark Fence*. This four-factor test controls, even when a "case arguably falls within" an exception to non-finality adopted in the *Bonner Mall* line of cases. *See Walthall v. United States*, 131 F.3d 1289, 1293 (9th Cir. 1997). We therefore do not have jurisdiction here.

IV

While we have recognized the need to take a pragmatic approach to asserting jurisdiction over orders in bankruptcy cases under § 158(d), we have long held that where the district court's decision "remanded to allow the bankruptcy judge more accurately to determine the respective rights and obligations of the parties," then we "need not depart from the usual finality doctrines of 28 U.S.C. § 1291," and lack jurisdiction over the appeal. *In re Martinez*, 721 F.2d at 265; *see also In re Stanton*, 766 F.2d at 1287; *In re Vylene Enters.*, 968 F.2d at 895. This longstanding precedent has now been confirmed by *Bullard*, which established that under the pragmatic approach to finality in bankruptcy cases, we have jurisdiction over rulings that are technically interlocutory because they do not end the bankruptcy case as a whole, but which do end a discrete proceeding within such cases. *Bullard*, 135 S. Ct. at 1692. *Bullard* compels the conclusion that rulings in bankruptcy cases that neither end a case nor a discrete dispute, but rather remand for further fact-finding on a central issue, are not final for purposes of § 158(d). Where the "parties' rights and obligations remain unsettled," then "'[f]inal' does not describe this state of affairs." *Id.* at 1693. Because a district court decision reversing a summary judgment and remanding for further fact-finding is not final by any measure, as *Bullard* expressly stated, we lack jurisdiction in this case, and accordingly dismiss the appeal.

**APPEAL DISMISSED.**