NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DEC 12 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In re: ALEX A. KHADAVI, <br><br> Debtor, <br><br> ------------------------------ <br><br> GREEN COIN, <br><br>   Appellant, <br><br>  v. <br><br> ALEX A. KHADAVI; JASON M. RUND, Chapter 7 Trustee, <br><br>   Appellees. | No.   23-60020 <br><br> BAP No. 22-1205 <br><br> MEMORANDUM[*] |

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Spraker, Corbit, and Lafferty III, Bankruptcy Judges, Presiding

Submitted December 8, 2023[**]
Pasadena, California

Before: CALLAHAN, R. NELSON, and BADE, Circuit Judges.

---

[*]   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]   The panel unanimously concludes this case is suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

Green Coin appeals from the Bankruptcy Appellate Panel's ("BAP") order affirming the bankruptcy court's summary judgment for the bankruptcy Trustee in an adversary proceeding. Green Coin contracted with Alex Khadavi, the bankruptcy debtor, to buy his residential property for $85 million with a 3% deposit requirement. After Green Coin failed to pay the full deposit, the Trustee, as successor-in-interest to Khadavi, moved for summary judgment on the grounds that Green Coin had defaulted on the purchase agreement and therefore the bankruptcy estate could retain the amount of the deposit that had been paid, $900,000, as liquidated damages. The bankruptcy court ruled in favor of the bankruptcy estate, finding that Green Coin had defaulted by failing to pay the full deposit and that liquidated damages were proper. The BAP affirmed.

We have jurisdiction over final decisions of three-judge bankruptcy appellate panels under 28 U.S.C. § 158(d)(1). *In re Gugliuzza*, 852 F.3d 884, 891 (9th Cir. 2017). We affirm.

1.    Under the liquidated damages clause of the purchase agreement, "[i]f Buyer fails to complete th[e] purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid." The term "default" is not defined in the purchase agreement, so "[t]he clear and explicit meaning of [the term], interpreted in [its] ordinary and popular sense, . . . controls judicial interpretation." *California v. Cont'l Ins. Co.*, 281 P.3d 1000, 1004 (Cal. 2012)

2

(internal quotation marks and citations omitted).

Green Coin argues that its failure to pay the full deposit was not a default for purposes of the liquidated damages provision because the default did not prevent the sale from closing. This interpretation of the liquidated damages provision is flawed because it is too narrow. The liquidated damages provision includes a conditional clause preceding the "default" clause: "*If* Buyer fails to complete this purchase *because of* Buyer's default, Seller shall retain, as liquated damages, the deposit actually paid." Under the clear meaning of this conditional phrasing, the buyer's default leads to a failure to complete the purchase, not the reverse. *See Cont'l Ins. Co.*, 281 P.3d at 1004. And the phrase in this provision, "deposit actually paid," includes a failed purchase in which the buyer paid part, but not all, of the deposit, as happened here.

Beyond that, the ordinary meaning of "default" encompasses more than a failure to complete a purchase. Rather, it is the "[t]he omission or failure to perform a legal or contractual duty." *Default*, Black's Law Dictionary (11th ed. 2019); *see In re Hawkeye Ent., LLC*, 49 F.4th 1232, 1237 (9th Cir. 2022) ("The ordinary meaning of 'default' is uncontroversial: it means '[a] failure to perform a task or fulfill an obligation.'" (citing *American Heritage Dictionary of the English Language* 345 (1976) and *Black's Law Dictionary* 505 (4th ed. 1968))). Here, it is undisputed that Green Coin failed to timely pay the full amount of the required

deposit. And timely payment of the deposit was a contractual duty under the purchase agreement. Given its ordinary meaning, "default" includes the failure to complete a contractual duty, like the timely payment of a deposit. *See Default*, Black's Law Dictionary (11th ed. 2019). The liquidated damages provision was therefore triggered when Green Coin failed to timely pay the full deposit.

2.     No record evidence supports Green Coin's position that Khadavi's December 6, 2021 declaration operated to *unilaterally* cancel the purchase agreement and trigger ¶ 14D's requirement that the seller must return the deposit upon unilateral cancellation. Khadavi did not indicate in his declaration that he intended to return the deposit, and his counsel affirmatively stated in court that Khadavi would "seek to retain th[e] deposit."

In addition, under ¶ 14D, "Seller" may not unilaterally cancel until it "deliver[s] to Buyer a [notice to buyer to perform]." Khadavi sent Green Coin a notice to perform on December 1, 2021. The notice states that Green Coin needed to perform "within [three] Days After Delivery" before Khadavi "may cancel the Agreement." Based on the definitions in the purchase agreement, Green Coin was required to perform no later than 11:59 p.m. on Monday, December 6, 2021. *See Cont'l Ins. Co.*, 281 P.3d at 1004 ("If contractual language is clear and explicit, it governs." (citation omitted)). This means that Khadavi could not have validly cancelled the agreement under ¶ 14D until the day *after* he filed his declaration.

4

Considering those undisputed facts, Green Coin fails to carry its burden to show that Khadavi unilaterally cancelled the agreement. *See generally In re Adbox, Inc.*, 488 F.3d 836, 843 (9th Cir. 2007) (explaining that the non-moving party bears the burden "to identify 'specific facts showing that there is a genuine issue for trial.'" (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986))).

3.	Lastly, there is evidence in the record that Khadavi and Green Coin attempted to *mutually* cancel the purchase agreement and disburse the deposit funds that were held in escrow through the cancellation of contract form and Addendum #3, which is inconsistent with Khadavi's alleged unilateral cancellation of that agreement. Regardless, their purported agreement was unenforceable because it was never approved by the bankruptcy court pursuant to the court's sale order. And Green Coin does not dispute the findings of the bankruptcy court and the BAP that the agreement in Addendum # 3 to split the deposit was "an attempted compromise of the parties' dispute over the deposit," and was thus "subject to notice and the requirements of [Federal Rule of Bankruptcy Procedure] 9019." Rule 9019 requires a compromise or settlement to be approved by the bankruptcy court "[o]n motion by the trustee and after notice and a hearing." Yet Green Coin never points to any evidence in the record indicating that the cancellation of contract form and Addendum #3 were ever presented to the bankruptcy court for approval. The purchase agreement was therefore never

validly cancelled.  *See* Fed. R. Bankr. P. 9019.  Accordingly, the bankruptcy court did not err in concluding that the bankruptcy estate was entitled to retain the $900,000 partial deposit as liquidated damages upon Green Coin's default.

**AFFIRMED.**