SKOPIL, Circuit Judge:
Block appeals the district court’s affirmance of the bankruptcy court’s summary judgment against him. This case arises out of an attempt by Gordon Aldrich, a trustee in bankruptcy, to sell the redemption rights to certain foreclosed property. Leo Block, a secured creditor, contends that Aldrich breached his fiduciary duty to him by failing to obtain the escrow funds paid for the property, to appraise the property, to use the funds in escrow to preserve the redemption rights, and by failing to bring the matter to the attention of the bankruptcy court. Block, also contends that the bankruptcy court failed to give full faith and credit to a state foreclosure decree. We reverse and remand.
FACTS AND PROCEEDINGS BELOW
In 1979, Ralph and Joyce Rigden filed a petition for reorganization relief under Chapter 11 of the Bankruptcy Code. Aid-rich was apointed trustee and the case was converted to a Chapter 7 liquidation. The debtors’ estate included, inter alia, several *729 parcels of land known as Big Bend Acres. That property was encumbered by first, second, and third deeds of trust.
On August 6, 1980 the bankruptcy court granted the first lienholders’ motion to modify the automatic stay under 11 U.S.C. § 362(a)(1) to allow them to foreclose their lien on the property known as Big Bend Acres. Thereafter, the first lienholders initiated foreclosure proceedings in Arizona Superior Court. All persons holding an interest in or claim to the subject property were named as defendants. Junior lien-holders were represented in the proceeding. At a sheriff’s sale on October 16, 1981 the property was sold to the first lienholders for $130,962.21. Block contends that the Mohave County Sheriff properly recorded the levy and notice of sale, although nothing in the record confirms this.
On July 31, 1981, before the state foreclosure proceedings, trustee Aldrich filed an application to permit him to sell debtors’ interest in certain property, including the Big Bend Acre lots, free and clear of all judgment liens. On October 16, 1981 the bankruptcy court authorized the sale of all the debtors’ real property, with judgment liens to attach to proceeds of the sale. Following the sheriff’s sale, the trustee realized the debtor no longer held fee title to the Big Bend Acre lots. He stipulated to amending his notice of the impending public auction sale. The bankruptcy judge modified his order authorizing the sale of the debtors’ property to provide that
The trustee ... can only auction whatever redemption rights that the trustee and estate may hold as a result of the Sheriff’s sale of said property ... following the judicial foreclosure.
In re Rigden, No. 79-2561 PHX RGM (Bankr. Ariz. Nov. 2, 1981) (order modifying “Notice of Real Property Auction”). Pursuant to the order, a corrected notice of Real Property Auction was filed.
The trustee employed Arizona Auctioneers to sell the debtors’ properties at a public auction on November 21, 1981. The debtors owned fee title to ten of the properties auctioned. As to the eleventh property, Big Bend Acres, the debtors owned only the right to redemption. Harold Milden-berger was the high bidder on Big Bend Acres. He executed a purchase contract to buy the lots for $167,000. An earnest money deposit of $25,000 was paid to First American Title Insurance of Mohave, Inc. (“First American”). The remainder of the purchase price was to be paid upon closing. Mildenberger immediately assigned his rights in the property to Creighton Anfin-son who, on November 25, 1981, entered into a standard form of escrow agreement with the seller, trustee Aldrich. The contract failed to explicitly state the trustee-seller no longer had fee title. Because of the foreclosure, .the sale was only for redemption rights. There are factual disputes surrounding representations, allegedly made by the auctioneer during the sale, concerning the status of the debtors’ title in the subject property. Anfinson alleges that the auctioneer represented that Big Bend Acres was sold on the same basis as the other properties and the purchaser of the property would receive clear title.
Following the auction, the trustee petitioned the bankruptcy court for confirmation of all the real property sales. On January 25, 1982 the bankruptcy court confirmed all the sales. All sales were closed except the Big Bend Acres sale. From the sale proceeds, secured creditor Block received only partial satisfaction and an entitlement to the net proceeds from the Big Bend Acres sale.
A number of disputes exist concerning occurrences after the auction but before the expiration of the right of redemption. Anfinson apparently contacted the trustee on May 13, 1982 to inquire why the escrow had not closed. He was assured it would close and Anfinson would acquire title. On April 8, 1982 Anfinson received a title report from First American. He allegedly realized for the first time that he had purchased only redemption rights. The trustee denies making any representations about the sale of Big Bend Acres other than it was for redemption rights. Aldrich apparently believed that following the sale *730 the right of redemption had passed to the buyer and First American, the escrow agent, would redeem the property. On April 16, 1982 the right of redemption expired, without being exercised.
On September 9, 1983 Block commenced this action against Aldrich alleging a breach of fiduciary duty. The bankruptcy court granted trustee Aldrich’s motion for summary judgment and denied Block’s cross-motion for summary judgment. The bankruptcy court concluded, inter alia, that while the purchaser believed he was purchasing clear title to Big Bend Acres, the trustee intended only to sell the redemption right. The court further concluded that the sale of clear title was impossible to consummate through no fault of the parties. Specifically, the court found that Big Bend Acres was subject to a first, second, and third deed of trust and that the amount needed to redeem and pay off the liens exceeded the amount bid for the property.
Block appealed the bankruptcy court decision to the district court. The district court affirmed. This appeal followed.
STANDARD OF REVIEW
This court reviews a grant of summary judgment de novo. Bower v. Bunker Hill Co., 725 F.2d 1221, 1223 (9th Cir.1984).
DISCUSSION
The principal issue on appeal is whether the trustee breached his duty to Block in failing to consummate the sale of redemption rights in Big Bend Acres, to close escrow, to appraise the property, to ensure the right of redemption was exercised before it lapsed, or to bring the matter to the bankruptcy court’s attention. The bankruptcy court concluded that the trustee did not breach any duty with respect to the sale of redemption rights. Because of a mistaken understanding as to the status of the title to the property, the bankruptcy court found that the contract between An-finson and Aldrich was not binding, and further, that a contract for the sale of clear title was impossible to perform because the contract price was insufficient to consummate the transaction.
The bankruptcy court’s grant of summary judgment for the trustee was in error. The record is insufficiently developed concerning the enforceability of the contract for the sale of Big Bend Acres for a grant of summary judgment to be appropriate. Further, because the record is unclear as to the amount necessary to perform the contract, we must remand this case for further proceedings.
A. Redemption Rights.
Under Arizona law, property may be redeemed by
The judgment debtor or his successor in interest in whole or in part ... [or by] ... A creditor having a lien by judgment or mortgage on the property sold____
Ariz.Rev.Stat. § 12-1281 (1982). The judgment debtor or his successor in interest may redeem at any time within six months after the date of sale. Id. at § 12-1282 B. The Big Bend Acres property was sold subject to redemption on October 16, 1981. The debtor or his successor in interest had until April 16, 1982 to exercise the right of redemption.
B. Breach of Fiduciary Duty.
A bankruptcy or reorganization trustee has a duty to exercise that measure of care and diligence that an ordinary prudent person would exercise under similar circumstances. In re Cochise College Park, Inc., 703 F.2d 1339, 1357 (9th Cir.1983). The trustee also has a fiduciary obligation to conserve the assets of the estate and to maximize distribution to creditors. In re Benny, 29 Bankr. 754, 760 (N.D.Cal.1983); 2A Collier on Bankruptcy ¶ 47.04 (14th ed. 1978). Although a trustee is not liable for mistakes in judgment where discretion is allowed, he or she is liable “for not only intentional but also negligent violations of duties imposed upon him by law.” In re Cochise, 703 F.2d at 1357 (citing Mosser v. Darrow, 341 U.S. *731 267, 272, 71 S.Ct. 680, 682, 95 L.Ed. 927 (1951)).[1]
The right of redemption subsequent to a foreclosure sale is property of the debtor’s estate pursuant to 11 U.S.C. § 541. In re Bialac, 712 F.2d 426, 430-31 (9th Cir.1983). As estate property, the right of redemption could be sold by Aid-rich with the approval of the bankruptcy court. 11 U.S.C. § 363. Public auction of the debtor’s interest in real property, including the right of redemption, may have resulted in a benefit to creditors. Concerning public auction of the redemption rights in Big Bend Acres, Aldrich, as trustee of the bankrupt debtor’s estate, owed a fiduciary duty to Block as secured creditor of the estate.
1. Real Estate Sales Contract
If a binding contract was formed, Aldrich arguably had a duty to collect the $167,000 Anfinson paid into escrow to buy Big Bend Acres. An understanding of the nature and enforceability of the contract between the parties is crucial to resolving the issues in this case. Block contends that the contract was for purchase of redemption rights which the trustee had a duty to enforce. The trustee alleges that the purchaser believed that he was purchasing clear title and that the amount of money offered was to complete a contract for the purchase of clear title.
Summary judgment should not be granted when a case involves complicated questions of law and fact, and a proper resolution of these issues would be advanced by further development of the record in the particular case. Virgil v. Time, Inc., 527 F.2d 1122, 1131, n. 15 (9th Cir.1975), cert. denied 425 U.S. 998, 96 S.Ct. 2215, 48 L. Ed.2d 823 (1976); Marcus v. St. Paul Fire & Marine Ins. Co., 651 F.2d 379 (5th Cir.1981); Phoenix Savings & Loan v. Aetna Casualty & Surety Co., 381 F.2d 245 (4th Cir.1967); Miller v. General Outdoor Advertising Co., 337 F.2d 944 (2nd Cir.1964); 10A C.A. Wright, A.R. Miller, & M. K. Kane, Federal Practice & Procedure, § 2728 at 191 (2d ed. 1983); Moore’s Federal Practice, ¶ 56.16 (2nd Ed.1985). As the Supreme Court has noted, “summary procedures, however salutary where issues are clear-cut and simple, present a treacherous record” for deciding extremely complex cases. Kennedy v. Silas Mason Co., 334 U.S. 249, 256-57, 68 S.Ct. 1031, 1034, 92 L.Ed. 1347 (1948). A decision based on an insufficiently developed record may “well *732 be found later to be lacking in the thoroughness that should precede judgment.” Id. at 257, 68 S.Ct. at 1034.
While Anfinson purchased the subject property claiming he was unaware of the encumbered title, this was not an ordinary transaction but was in fact a judicial sale under the order of the bankruptcy court. There is a strong policy favoring finality in confirmed judicial sales and the rule of caveat emptor is applicable to such sales. Hagan v. Gardner, 283 F.2d 643, 646 (9th Cir.1960). See also Schwartz v. J.R. Cianchette & Sons Corp., 362 F.2d 500, 505 (1st Cir.1966); In re Hooten Enterprises, Inc., 21 Bankr. 499, 501 (Bankr. N.D.Ala.1982). Thus, the purchaser at a judicial sale is presumed to know that the only title the trustee can sell is the trustee’s own right, title, and interest in the property. Hagan, 283 F.2d at 646.
Here, the bankruptcy court issued a public notice that the trustee was selling only the right of redemption to the Big Bend Acre lots. This may have been sufficient to put Anfinson on notice that he was purchasing only the right of redemption.[2] In addition, the purchase contract made specific reference to the bankruptcy court confirmation of any sale further placing the purchaser on notice that the property was the subject of a bankruptcy proceeding. Anfinson’s belief that he was purchasing free and clear title therefore may not have been justified.
Further, Anfinson’s mistake as to the status of the title of the subject property may not necessarily serve to defeat the formation of a contract if that mistake was unilateral. See Nationwide Resources Corp. v. Missabni, 134 Ariz. 557, 564-65, 658 P.2d 210, 217-18 (Ct.App.1982). See also Restatement (Second) of Contracts § 153 (1981). There are issues of fact, which should be clarified to determine whether Anfinson’s mistake was in fact unilateral. The contract itself does not mention redemption rights. There is evidence in the record, however, that Aldrich intended to sell only redemption rights and never represented otherwise. On the other hand, Anfinson stated that he attended the auction of the Big Bend Acre lots and that the auctioneer represented that the lots were being sold free and clear of liens. There also may have been events that occurred following the sale which may have affected the parties’ respective understanding of their contract.
Finally, even if the facts establish that Anfinson had actual or constructive notice of the status of the title of the property and further that his mistaken understanding about what he was purchasing was unilateral, a unilateral mistake about an underlying assumption of the contract may render a contract voidable if the mistake makes enforcement of the contract unconscionable. Restatement (Second) of Contracts § 153 (1981). To determine whether it would be unconscionable to hold Anfinson to the contract, it is necessary for the bankruptcy court to conduct a detailed inquiry into the parties’ conduct when entering into the contract for the sale of Big Bend Acres.
The record would also benefit from further development concerning Anfinson’s contractual obligation to purchase the redemption rights to Big Bend Acres and Aldrich’s duty to collect the $167,000 contractual purchase price offered by Anfin-son for the property. If a binding contract existed, the estate was legally entitled to the money offered for the property. The trustee may well have had an obligation to take steps to enforce the contract or at least to attempt to preserve either the money offered or the redemption rights. See In re Ryerson, 739 F.2d 1423, 1425 (9th Cir.1984) (debtor’s interest in “contract value” is property of the estate); see also 11 U.S.C. § 541. Accordingly, we find it necessary to remand this matter for further *733 proceedings so that the parties can more fully develop the record before the bankruptcy court determines whether a binding contract was formed and whether Aldrich fulfilled his duty, if any, with respect to the estate’s rights under the contract. In the current posture of the case the facts are insufficiently developed and the law too complex for summary judgment to be properly granted.
2. Other Duties of the Trustee
Appellant Block further alleges that trustee Aldrich breached his fiduciary duty by failing to appraise the property before the expiration of the right of redemption, to use the funds in escrow to preserve the rights, and to bring the matter to the attention of the bankruptcy court. The bankruptcy court did not address these claims.
As previously noted, the right of redemption is an asset of the estate which the trustee has a duty to preserve. In re Bialac, 712 F.2d at 430-31; see also 2A Collier on Bankruptcy ¶ 47.08[1] (14th ed. 1978). If a binding contract existed for the sale of the right of redemption, Aldrich may have had a duty to seek enforcement of the contract. In any event, Aldrich may have had an obligation to ensure that the redemption rights did not simply expire without being exercised. Certainly if Aid-rich knew before the expiration of those rights that Anfinson had withdrawn his money from escrow and would not close the deal, he had a duty to preserve this asset by attempting to redeem the property, sell the rights to another party, or to bring the matter to the attention of the bankruptcy court. The record does not disclose, however, whether or when Aldrich knew or should have known that Anfinson withdrew his money from escrow and declined to go through with the sale. This is a factual matter which should be resolved in order to determine whether the trustee breached his fiduciary duty, if at all, with respect to the redemption rights at issue.
It is apparent from the record that confusion surrounded the question of who was obligated to exercise the right of redemption. Relying on the sales contract and the escrow agreement, Aldrich believed the escrow agent, First American, was responsible for closing the deal and for exercising the right of redemption. Under Arizona law, however, trustee Aldrich may have been the only person entitled to redeem prior to the close of escrow. See Perry v. Safety Federal Savings & Loan Ass’n., 25 Ariz.App. 443, 445, 544 P.2d 267, 269 (Ariz.Ct.App.1976) (a grantee purchasing foreclosed property does not become a successor-in-interest until he receives a properly acknowledged deed). Aldrich’s erroneous belief that the deal would be consummated and the right of redemption exercised may not therefore have relieved him of the responsibility of preserving the right of redemption or personally monitoring this transaction to ensure against loss of this asset.
Finally, Aldrich asserts that even if he had been aware of the difficulty with consummating the sale of the redemption rights, his failure to take any action prior to the expiration of those rights was justified because there were no estate funds available to redeem the property and it would have been impossible to find a purchaser for the property. Nothing in the record supports these assertions. It is necessary to remand this matter for further findings on whether Aldrich knew or should have known that the deal for sale of the redemption rights would fall through and whether Aldrich could and should have taken steps to salvage those rights before they were lost.
C. Impossibility of Consummating the Sale.
The bankruptcy court included the amount of the junior liens in determining that the amount needed to consummate the sale of clear title to Big Bend Acres exceeded the purchase price of $167,000. As a result, the bankruptcy court determined that the contract for the sale of clear title was impossible to consummate and Aldrich breached no fiduciary duty.
*734 Although his arguments are far from clear, Block attacks the bankruptcy court’s conclusion of impossibility. Apparently Block is contending that even if the bankruptcy court was correct in concluding that Anfinson and Aldrich contracted for the purchase of clear title, the contract was still possible to perform. Specifically, Block appears to argue that the amount needed to consummate a contract for the purchase of clear title equalled the amount needed to redeem, i.e., the foreclosure price, because the foreclosure sale extinguished the encumbrances of the junior lienholders.
Our resolution of the complex question of whether the bankruptcy court erred in finding this contract impossible to perform requires a twofold inquiry. First, it must be determined whether Anfinson purchased the right of redemption or free and clear title since different amounts are probably needed to consummate these two transactions.[3] Second, assuming clear title was purchased, to determine the amount necessary to consummate that transaction, the effect on the subordinate liens of the foreclosure proceeding and subsequent redemption by the debtor or his grantee, must be analyzed.
We turn first to the issue of whether the parties entered into a contract for the sale of the right of redemption or free and clear title. The resolution of this first issue depends on how the bankruptcy court on remand resolves those issues concerning the nature and enforceability of the parties’ contract. We have already discussed at length in part B-l of this opinion, matters relating to whether Anfinson and Aldrich had a binding contract and whether that contract was for the right of redemption or free and clear title. See pp. 731-32 supra. Those matters merit no further comment.
1. Amount to Redeem
If on remand the bankruptcy court determines that a binding contract for the sale of redemption rights existed, then to determine whether that sale could be consummated, it should determine the amount needed to redeem.
We look to Arizona law to determine redemption rights. See In re Bialac, 712 F.2d at 430. Under Arizona law, to redeem property the judgment debtor or his successor in interest must pay the amount of the purchase price on foreclosure with eight percent added thereto, together with the amount of any assessments or taxes which the purchaser has lawfully paid thereon after purchase. Ariz.Rev.Stat. § 12-1285. Here, the senior lienholders paid $130,-962.91 at the state foreclosure proceeding. That amount plus eight percent interest and any taxes or assessments would probably not exceed the purchase price of $167,-000.[4]
2. Amount for Clear Title
If, consistent with the analysis set forth in part B-l of this opinion, the bankruptcy court concludes that the parties contracted for the sale of clear title, then to determine whether the contract was impossible to perform,[5] the bankruptcy court must deter *735 mine the amount needed to obtain clear title. To calculate the amount needed to obtain clear title, the effect of the state foreclosure and a subsequent redemption on the right of junior lienholders must be analyzed.
Arizona courts have not yet addressed this precise issue. Block, relying on Skou-son v. L.J. Development Co., Inc., 134 Ariz. 289, 655 P.2d 1341 (Ct.App.1982), argues that the state foreclosure action extinguished the rights of junior lienholders and that those liens would not have been revived following redemption by the debtor or his successor in interest. Therefore, Block contends that the amount needed to consummate a contract for sale of clear title equalled the amount needed to redeem and the bankruptcy court erred in finding a contract for sale of clear title impossible to perform.
Skouson held that junior lienholders may enforce their liens after redemption unless they were made parties to the foreclosure action. 134 Ariz. at 292, 655 P.2d at 1344. Skouson did not, however, specifically consider the issue of whether a lienholder, who is a party to a state foreclosure action, may not enforce his liens against a redemption-er. Those courts which have considered this issue have reached conflicting and inconsistent results. Compare Call v. Jeremiah, 246 Or. 568, 584-86, 425 P.2d 502, 510 (1967) (neither redemption by mortgagor nor mortgagor’s grantee can revive pre-existing junior mortgage liens); Cooper v. Mauer, 122 Iowa 321, 326, 98 N.W. 124, 126 (1904) (grantee of the debtor who redeems from a sale takes title purged of the junior liens); with Walsh v. Robinson, 135 Mich. 16, 22, 97 N.W. 55 (1903) (a subordinate lien is not divested by reason of the property by a judgment debtor or his grantee); and De Roberts v. Stiles, 24 Wash. 611, 619-20, 64 P. 795, 798 (1901) (redemption by the debtor or his grantee removed any effect on the second mortgage caused by the foreclosure proceedings).
We find it unnecessary to decide how the Arizona courts would resolve this issue. If the bankruptcy court concludes that the parties’ contracted for the sale of redemption rights, then the amount needed to obtain clear title need not be calculated and the effect of the foreclosure and redemption on the subordinate liens need never be determined. Since it may well be unnecessary for the bankruptcy court to decide this novel and complex question of state law, we decline to express any opinion on how it should be resolved.[6] We do note, however, that revival of the junior liens, the amounts of which were not specified, would arguably increase the amount needed to obtain clear title and therefore may well have rendered the contract price insufficient to complete the transaction.
In any event, neither the amount necessary to consummate a transaction for the sale of clear title nor the amount necessary to consummate a transaction for the sale of the right of redemption is specified. On remand, after determining the nature of the parties’ contract, the bankruptcy court should specify the amount necessary to consummate the transaction.
CONCLUSION
On remand, the bankruptcy court should determine whether the parties entered into a binding contract, and if so whether that contract was for the sale of clear title or redemption rights to Big Bend Acres. In order to properly resolve this legal issue, the bankruptcy court must conduct a detailed inquiry into matters relating to the execution of this contract. Once the bankruptcy court resolves issues relating to the nature of the parties’ contract, consistent with the views and principles set forth in this opinion, the court should then specify *736 the amount necessary to consummate that transaction.
REVERSED and REMANDED.

. The dissent voices some reservations and concern about our discussion of the fiduciary duty of the bankruptcy trustee. The dissent maintains that the nature of the trustee’s duty varies depending upon whether he or she is acting on behalf of the individual debtor or a corporate debtor. In the latter case, the dissent maintains that the trustee’s role is in the nature of a corporate manager and that his actions should therefore be measured by the business judgment rule rather than by the fiduciary standard of reasonable care and due diligence. To support this contention the dissent relies on the recent Supreme Court decision in Commodity Futures Trading Commission v. Weintraub, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985). The Supreme Court in Weintraub held that the trustee in bankruptcy of a debtor corporation, rather than the corporation’s directors, had the power to waive the debtor corporation’s attorney-client privilege. Id. at 1992-93. Weintraub’s holding is limited. Nowhere does the Supreme Court in Weintraub state that as a general rule the conduct of the trustee of a corporate debtor is analyzed under the business judgment rule. Weintraub does contain some language discussing the nature of the role of the trustee of a corporate debtor. The Supreme Court, in an effort to support its holding in that case (i.e., that the trustee rather than the directors controlled the corporation’s attorney-client privilege), discussed the way in which a trustee plays a role most analogous to that of a solvent corporation’s management. Nonetheless, we do not believe that Weintraub compels or requires us to reformulate the standard by which we judge the conduct of a trustee in the context of corporate debtors generally. In the absence of a clear statement from the Supreme Court that the business judgment rule now applies whenever analyzing the conduct of a corporate debtor’s trustee, we are unwilling to adopt such a rule, especially in the context of this case where it is unclear that the trustee was acting on behalf of the corporate debtor. The majority in this case remains convinced, even after Weintraub, that the reasonable care and due diligence standard is the one by which we judge the conduct of the trustee, regardless of whether the debtor is an individual or a corporation. We are unwilling to extend or interpret the Weintraub holding in the manner proposed by the dissent.

. As has already been noted, the record is unclear on whether the Mohave County Sheriff recorded the levy and notice of sale. If the certificate of sale was recorded, Anfinson would have been further placed on notice as to the status of the title of Big Bend Acres. See Ariz. Rev.Stat. § 33-416 (1974) (effect of recording).

. Neither the bankruptcy court nor the district court specified the amount needed to purchase the right of redemption or to obtain free and clear title. It is therefore impossible to determine whether the purchase price was sufficient to consummate either transaction.

. Neither the bankruptcy court nor the district court specified the amount needed to redeem the property. On remand, the exact amount needed to redeem should be calculated in accordance with Ariz.Rev.Stat. § 12-1285.

. In determining whether the parties’ contract was impossible to perform, there is one additional matter the bankruptcy court may find it necessary to address on remand. Even if the purchase price was insufficient to consummate this transaction, Anfinson may have been bound to purchase the property although his bid was too low unless a condition of the contract was that the purchase price be sufficient. See Restatement (Second) of Contracts §§ 227, 229 (1981). Aldrich therefore may still have breached his fiduciary duty in failing to enforce the contract. Further, even if the contract was impossible to perform, Aldrich may have breached his fiduciary duty by virtue of the manner in which he dealt with the redemption rights. See p. 733, supra.

. If the bankruptcy court does find it necessary to determine the effect of foreclosure and redemption on the subordinate liens, we urge it to consider certifying that question to the Arizona Supreme Court. Given the complexity of this issue, as well as the split in the jurisdictions as to how to resolve this issue, use of Arizona’s certification procedure seems appropriate. See Kris v. Buckeye Petroleum Co., Inc., 145 Ariz. 374, 375, 701 P.2d 1182, 1183 (1985) (en banc).