**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: KEVAN HARRY GILMAN,
Debtor,


TAMMY R. PHILLIPS; TAMMY R.
PHILLIPS, APLC,

*Plaintiffs - Appellants*,

v.

AMY L. GOLDMAN,

*Defendant - Appellee*.

No. 24-2249

D.C. No.
2:22-cv-04450-
MWF


OPINION

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted January 13, 2026
Pasadena, California

Filed May 7, 2026

Before: Mary H. Murguia, Chief Judge, and Ronald M.
Gould, Johnnie B. Rawlinson, Jay S. Bybee, Morgan B.
Christen, Jacqueline H. Nguyen, John B. Owens, Daniel A.

Bress, Danielle J. Forrest, Anthony D. Johnstone and Ana de Alba, Circuit Judges.

Opinion by Judge Nguyen

## SUMMARY[*]

### Bankruptcy

The en banc court (1) reversed the district court's decision upholding the bankruptcy court's dismissal of an adversary proceeding based on a Chapter 7 bankruptcy trustee's immunity from allegations that she failed to preserve and safeguard estate assets, and (2) remanded for the bankruptcy court to consider the trustee's remaining arguments for dismissal.

The en banc court held that it had jurisdiction to review the district court's order affirming in part and reversing in part the bankruptcy court's dismissal and remanding for further proceedings. In light of plaintiff's counsel's representation that they were standing on the complaint rather than seeking leave to amend in the bankruptcy court, the en banc court concluded that the district court's order was effectively final, and the en banc court therefore had jurisdiction under 28 U.S.C. § 158(d)(1).

The en banc court held that a bankruptcy trustee sued in her personal capacity may be entitled to quasi-judicial

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

immunity, which provides trustees absolute immunity from liability for functions involving the exercise of discretionary judgment that are essential to the authoritative adjudication of private rights to the bankruptcy estate.

The en banc court held that a bankruptcy trustee also may be entitled to derived judicial immunity, under which a trustee will not be held liable when (1) her acts were within the scope of her authority; (2) the debtor, creditors, and other interested parties had notice of the proposed acts; (3) the trustee candidly disclosed the proposed acts to the bankruptcy court; and (4) the bankruptcy court approved the acts.

The en banc court held that the trustee was not entitled to quasi-judicial immunity because the complaint's allegations related to the trustee's functions of gathering estate property, investigating the debtor's finances, and operating the debtor's business on a short-term basis. These functions did not determine how assets would be divided among creditors, but rather called upon the trustee to act as a property manager. The en banc court also concluded that, on the current record, the trustee was not entitled to derived judicial immunity.

## COUNSEL

Charles Q. Jakob (argued), Law Office of Charles Q. Jakob, Carmichael, California, for Plaintiffs-Appellants.

Lann G. McIntyre (argued), Lewis Brisbois Bisgaard & Smith LLP, San Diego, California; Maria L. Garcia, Lewis Brisbois Bisgaard & Smith LLP, Los Angeles, California; Michael Wilk, Kaufman Dolowich LLP, Los Angeles, California; for Defendant-Appellee.

Adam B. Nach and Helen Santilli, Nach Rodgers Hilkert & Santilli, Phoenix, Arizona; Martin P. Sheehan, Sheehan & Associates PLLC, Wheeling, West Virginia; for Amicus Curiae National Association of Bankruptcy Trustees.

## OPINION

NGUYEN, Circuit Judge:

Chapter 7 bankruptcy trustees enjoy certain immunities with respect to their role in administering a debtor's estate. Today we clarify the nature and limits of those immunities. The district court and bankruptcy court applied the wrong legal test when evaluating Trustee Amy Goldman's immunity from allegations that she failed to preserve and safeguard estate assets. Because the pleadings do not establish that Goldman is entitled to immunity, we reverse and remand.

### I.

### A.

This suit arises out of the long-standing efforts by Tammy R. Phillips and her eponymous law firm (collectively, "Phillips") to collect on their pre-petition judgments against debtor Kevan Harry Gilman. In February 2011, Gilman filed for bankruptcy protection under Chapter 7, and the U.S. Trustee appointed Goldman to oversee the case. *See* 11 U.S.C. § 701(a)(1).

Gilman disclosed an interest in two Los Angeles properties that he owned with his wife—their residence on

Varna Avenue in Van Nuys,[1] in which Gilman claimed a homestead exemption, and a commercial property on Corbin Avenue in Northridge. In June 2011, the trustee reported that there was "no property available for distribution from the estate over and above that exempted by law" and requested to be discharged from her duties as trustee because the estate had been fully administered.[2] *See* 11 U.S.C. § 727; Fed. R. Bankr. P. 2002(e).

Phillips raised several objections to Gilman's claimed homestead exemption. After protracted litigation on the issue in the main bankruptcy case, including two appeals to this court, *see generally In re Gilman*, 887 F.3d 956 (9th Cir. 2018), we affirmed the bankruptcy court's decision overruling most of the objections, *In re Feinstein*, No. 20-56279, 2023 U.S. App. LEXIS 1136, 2023 WL 195513 (9th Cir. Jan. 17, 2023).

Meanwhile, in November 2020, Phillips moved the bankruptcy court to direct Goldman to administer the estate or, alternatively, remove her as trustee. Phillips argued that the properties were valued "well beyond" the amount of Gilman's secured debt and that Goldman "did not adequately explore" malpractice claims that Gilman may have had against his counsel. With the bankruptcy court's

---

[1] Gilman's wife moved out of the home in August 2012, and a divorce decree was entered in March 2021.

[2] At the time, there was a pending adversary proceeding in which Phillips sought to have Gilman's debts declared nondischargeable. In 2016, the bankruptcy court denied Gilman a discharge, finding that he had removed and concealed estate property "with the intent to hinder and delay creditors." *Phillips v. Gilman*, No. 1:11-ap-01389, 2016 WL 8115713, at *10 (Bankr. C.D. Cal. Nov. 3, 2016); *see* 11 U.S.C. § 727(a)(2).

authorization, Goldman hired general bankruptcy counsel to assess the value of the secured claims that Phillips asserted and to defend herself against Phillips's charge of an improper investigation. Goldman then withdrew the no-asset report and notified the bankruptcy court that assets would be administered, and the court set a deadline for creditor claims.

Following Gilman's death in May 2021, Goldman filed notice of her intent to abandon the real properties, as well as Gilman's potential malpractice claim against his counsel, because she had determined that they had inconsequential value and would be burdensome to the bankruptcy estate. *See* 11 U.S.C. § 554(a). In her view, the properties had no realizable equity because the amount of secured debts, estimated costs of sale, potential adverse tax consequences, and estimated administrative fees exceeded the properties' anticipated values. She represented that Gilman, having released his legal malpractice claim in exchange for free representation in related matters, had no damages, and that the statute of limitations had run prior to the petition date. After a hearing, the bankruptcy court overruled Phillips's objections and entered orders abandoning the properties at issue. *See* Fed. R. Bankr. P. 6007(a)(2).

Goldman then filed a second no-asset report and again requested to be discharged from her duties as trustee. In response to Phillips's objections, Goldman withdrew the report and successfully demanded turnover of funds from Gilman's ex-wife. Gilman's bankruptcy case remains pending notwithstanding his death. *See* Fed. R. Bankr. P. 1016(a).

**B.**

In February 2022, Phillips commenced this adversary proceeding against Goldman. Phillips claims that Goldman was grossly negligent in managing the real properties, in breach of her fiduciary duties to the creditors, by allowing waste and failing to collect rent.[3]

Phillips alleges that Goldman knew Gilman was deferring maintenance on the properties, which physically deteriorated over the years due to his neglect, and that she failed to safeguard them. Goldman allegedly learned from case filings and letters sent to her by Phillips's counsel that Gilman and his wife were collecting rent from the properties and not paying real estate taxes or homeowners association dues. However, she allegedly made no attempt to obtain a turnover of the rent payments for use in maintaining the properties or paying unsecured creditor claims. Phillips asserts that the lack of maintenance caused the property values to appreciate more slowly than the market as a whole, losing a total of $200,000 to $300,000 in value during the 11 years they had then been in the bankruptcy estate.

Goldman moved to dismiss the complaint on several grounds, and the bankruptcy court granted the motion, with prejudice, on two: quasi-judicial immunity and the statute of

---

[3] Phillips also asserts a claim against Goldman and her sureties to collect on the faithful performance bond. *See* 11 U.S.C. § 322 (requiring trustees to file a bond "conditioned on the faithful performance of [their] official duties"); Fed. R. Bankr. P. 2010(b) (authorizing proceeding on the bond by the injured party). Although neither the bankruptcy court nor the district court appears to have explicitly addressed this claim, it is derivative of Phillips's claims for breach of fiduciary duty.

limitations.[4]  In the bankruptcy court's view, Goldman has immunity if her discretionary decisions to act or refrain from acting amounted only to negligence—as opposed to gross negligence.  The court concluded that Phillips alleges only ordinary negligence.

As for the time bar, the bankruptcy court found that Phillips had notice that Goldman was not actively managing the properties in 2011, when Goldman filed the first no-asset report.  In addition, the court observed, Phillips allegedly notified Goldman in a 2016 letter about rent payments that had not been turned over to the estate, yet Phillips waited more than four years—the limitations period—to file suit.  *See* Cal. Civ. Proc. Code § 343; *FDIC v. McSweeney*, 976 F.2d 532, 535–36 (9th Cir. 1992).

Phillips appealed the bankruptcy court's judgment to the district court, which affirmed in part, reversed in part, and remanded.  The district court reversed the bankruptcy court's ruling that the claims were time-barred.  Observing that nothing in the complaint establishes Phillips learned of the properties' disrepair prior to 2019, when she saw Gilman's reference to "deferred maintenance," the district court concluded that Phillips could claim damages from Goldman's failure to collect rents within four years of filing suit under a continuous accrual theory.[5]

The district court affirmed the bankruptcy court's ruling that Goldman is entitled to quasi-judicial immunity based on

---

[4] In addition, Goldman asserted that the business judgment rule precludes liability, the asserted damages are speculative, and Phillips's failure to mitigate any damages bars recovery because a trustee has no obligation to "babysit" creditors' collateral.

[5] Goldman does not challenge the district court's application of this theory, and we therefore do not address it.

the current pleading. The district court agreed with the bankruptcy court that immunity extends to a trustee's acts of ordinary negligence if they are "closely related to the judicial process" and involve the exercise of judgment, *Burton v. Infinity Cap. Mgmt.*, 862 F.3d 740, 748 (9th Cir. 2017), but not to "actions that are deemed to be gross negligence or for acts of intentional wrongdoing," *In re Cont'l Coin Corp.*, 380 B.R. 1, 15 (Bankr. C.D. Cal. 2007). And while it also agreed with the bankruptcy court that Phillips failed to allege conduct exceeding ordinary negligence, the district court remanded the case for a determination of whether amendment would be futile.

Phillips appealed the district court's order. Following argument before a three-judge panel of this court, a majority of non-recused active judges voted to hear the case en banc. *See Phillips v. Goldman*, 158 F.4th 1082 (9th Cir. 2025).

## II.

Before turning to the merits, we must first address whether we have jurisdiction to review the district court's order. *See Herklotz v. Parkinson*, 848 F.3d 894, 897 (9th Cir. 2017) (holding that we have an "independent obligation" to assess our jurisdiction). Unlike the district court's power of review in bankruptcy cases, which extends to interlocutory decisions, *see* 28 U.S.C. § 158(a)(3), our jurisdiction is normally limited to "final" decisions of the district court and bankruptcy appellate panel, *id.* § 158(d)(1).[6]

---

[6] We can review interlocutory decisions only upon certification by the district court or bankruptcy appellate panel, as the case may be, the bankruptcy court, or the parties acting jointly. *See* 28 U.S.C. § 158(d)(2).

Although the rules of finality "are different in bankruptcy," *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015), they are not entirely different. Bankruptcy cases involve "an aggregation of individual controversies," *id.* (quoting 1 Collier on Bankruptcy ¶ 5.08[1][b] (16th ed. 2014)), and the finality analysis differs "only to the extent a 'final' order under § 158 may terminate a discrete proceeding in bankruptcy, rather than the entire bankruptcy case," *In re Gugliuzza*, 852 F.3d 884, 898 (9th Cir. 2017). A bankruptcy court's decision that "finally determines the discrete issue to which it is addressed" will be final for appeal purposes if it "seriously affects substantive rights," *id.* at 894 (quoting *In re Perl*, 811 F.3d 1120, 1126 (9th Cir. 2016)), or, put differently, if it alters "the legal relationships among the parties," *id.* (quoting *Bullard*, 575 U.S. at 506).

When the ruling involves a "contested matter"—the "undefined catchall for . . . issues the parties dispute" by motion in the main bankruptcy case—determining finality can be challenging. *Bullard*, 575 U.S. at 505; *see* Fed. R. Bankr. P. 9014(a). "[T]he list of contested matters is 'endless' and covers all sorts of minor disagreements." *Bullard*, 575 U.S. at 505 (quoting 10 Collier ¶ 9014.01).

For appeals taken from an adversary proceeding, however, finality is often easier to assess. Adversary proceedings are "essentially full civil lawsuits carried out under the umbrella of the bankruptcy case," *id.*, and "many . . . would exist as stand-alone lawsuits but for the bankrupt status of the debtor," *id.* at 501. As with other stand-alone lawsuits, an order normally must "entirely terminat[e] an adversary proceeding" to be final. *Gugliuzza*, 852 F.3d at 894 (quoting *Four Seas Ctr., Ltd. v. Davres, Inc.*, 754 F.2d 1416, 1418 (9th Cir. 1985)).

A district court's order affirming or reversing a final decision by the bankruptcy court is itself final and immediately appealable under § 158(d)(1). *Id.* Things become murkier when, as here, the district court remands the case to the bankruptcy court for further proceedings. To determine whether such an order is final and appealable, we apply "a four-factor test, considering '(1) the need to avoid piecemeal litigation; (2) judicial efficiency; (3) the systemic interest in preserving the bankruptcy court's role as the finder of fact; and (4) whether delaying review would cause either party irreparable harm.'" *Id.* (quoting *Perl*, 811 F.3d at 1126).

Applying the four-factor test here, the district court's remand order does not appear final. The order "did not end the discrete proceeding before it," *id.* at 898, because Phillips potentially could prevail on an amended complaint. *Cf. Bullard*, 575 U.S. at 503 (holding that an order denying plan confirmation is not final merely because it "rule[s] out the specific arrangement of relief embodied in a particular plan," since other plans can be proposed and confirmed). Thus, "the district court's decision did not 'alter the status quo' or 'fix the rights and obligations of the parties.'" *Gugliuzza*, 852 F.3d at 898 (brackets omitted) (quoting *Bullard*, 575 U.S. at 502). Because leave to amend a pleading deficiency should be freely granted, *see* Fed. R. Civ. P. 15(a)(2); Fed. R. Bankr. P. 7015, "the risk of piecemeal litigation is significant," *Gugliuzza*, 852 F.3d at 899 (quoting *In re Landmark Fence Co.*, 801 F.3d 1099, 1103 (9th Cir. 2015)). Entertaining an appeal when the pleadings are unsettled risks "multiple 'climbs up the appellate ladder and slides down the chute' and the 'delays and inefficiencies' that result." *Id.* at 894 (brackets omitted) (quoting *Bullard*, 575 U.S. at 504).

Granted, "the issues on appeal in this case are purely legal in nature, and our disposition of these issues could aid the bankruptcy court" by clarifying a trustee's entitlement to immunity, but this rationale for exercising jurisdiction "is inconsistent with *Bullard*." *Id.* at 898, 899. We do not "evaluate whether the appeal of a specific ruling would be efficient in a particular case," which would require us to improperly "peek at the merits in order to determine whether we have jurisdiction." *Id.* at 897. Finally, at this stage, "the bankruptcy court's fact-finding role is best preserved by allowing the remand to run its course," *id.* at 899, because the bankruptcy court could allow the case to proceed on an amended complaint. And "it is doubtful that an interlocutory district court order can cause irreparable harm in light of the 'parties' rights and obligations remaining unsettled,' and the availability of mechanisms for interlocutory review." *Id.* (brackets and citation omitted) (quoting *Bullard*, 575 U.S. at 503). In sum, the four-factor test weighs in favor of treating the district court's remand order as interlocutory.

At argument, however, Phillips's counsel represented that Phillips is standing on the complaint rather than seeking leave to amend in the bankruptcy court. As a general matter, "the plaintiff has the right to stand on the pleading" if she believes that it satisfies Rule 8(a). *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065 (9th Cir. 2004). While this may require the trial court to issue a judgment dismissing the complaint with prejudice, *see WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc), the bankruptcy court has already done so here.

When "all that remains to do on remand is a purely mechanical . . . task" that will not "affect the issue that the disappointed party wants to raise on appeal," we deem the district court's decision to be final for purposes of appellate

jurisdiction. *In re Saxman*, 325 F.3d 1168, 1172 (9th Cir. 2003) (quoting *In re Fox*, 762 F.2d 54, 55 (7th Cir. 1985)). In light of counsel's representation that Phillips will not amend the complaint, there is nothing left to be done but for the bankruptcy court to enter another judgment dismissing the complaint with prejudice and the district court to affirm. Under these circumstances, we conclude that the district court's order is effectively final, and we therefore have jurisdiction under § 158(d)(1).

## III.

### A.

A party aggrieved by a bankruptcy trustee's actions can seek redress against the trustee in her official or personal capacity. In official capacity suits, where the trustee is sued as the representative of the bankruptcy estate, *see* 11 U.S.C. § 323, any award will be paid from the estate. *See Barton v. Barbour*, 104 U.S. 126, 128 (1881); *In re Crown Vantage, Inc.*, 421 F.3d 963, 970–71 (9th Cir. 2005). In personal capacity suits, absent a basis for immunity, the trustee is personally liable for her intentional and negligent torts. *See Mosser v. Darrow*, 341 U.S. 267, 274 (1951); *In re Cochise Coll. Park, Inc.*, 703 F.2d 1339, 1356–57 (9th Cir. 1983).

Subjecting the trustee to the risk of personal liability promotes honesty and efficiency in the administration of a bankruptcy estate. *See Mosser*, 341 U.S. at 274 ("The most effective sanction for good administration is personal liability for the consequences of forbidden acts . . . ."). At the same time, to ensure that would-be trustees are not discouraged from serving in this publicly beneficial role, courts provide "ways by which a trustee may effectively protect [her]self against personal liability." *Id.*

Under our case law, bankruptcy trustees may be entitled to immunity if they are acting *like* judges or *for* judges. The first doctrine, known as "quasi-judicial immunity," provides trustees absolute immunity from liability for "functions involving the exercise of discretionary judgment" that are "essential to the authoritative adjudication of private rights to the bankruptcy estate." *In re Castillo*, 297 F.3d 940, 949, 951 (9th Cir. 2002). The second doctrine, which is referred to as "derived judicial immunity" or simply "derived immunity," provides protection in discrete circumstances. A trustee will not be held liable when (1) her acts were within the scope of her authority; (2) the debtor, creditors, and other interested parties had notice of the proposed acts; (3) the trustee candidly disclosed the proposed acts to the bankruptcy court; and (4) the bankruptcy court approved the acts. *In re Harris*, 590 F.3d 730, 742 (9th Cir. 2009).

Although the two doctrines overlap, including in the terminology we have used to describe them,[7] each offers unique protections. Quasi-judicial immunity shields a trustee who acts without court authorization when performing judge-like actions, and derived immunity protects a trustee who performs court-sanctioned acts even when the acts are non-adjudicative in nature. We discuss each of these doctrines in turn.

**1.**

We start with quasi-judicial immunity. In a series of decisions in the 1980s, we recognized that a bankruptcy trustee may be entitled to quasi-judicial immunity "for her

---

[7] Because the terminological overlap may have contributed to doctrinal confusion, we will refer only to "derived immunity" rather than "derived judicial immunity."

discretionary acts," *Bennett v. Williams*, 892 F.2d 822, 825 (9th Cir. 1989), even if not expressly authorized by the bankruptcy court, so long as she "is performing an integral part of the judicial process," *Lonneker Farms, Inc. v. Klobucher*, 804 F.2d 1096, 1097 (9th Cir. 1986). Then, in *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993), "the Supreme Court worked a sea change in the way in which we are to examine absolute quasi-judicial immunity for nonjudicial officers." *Castillo*, 297 F.3d at 948. The Court rejected our approach to immunity in which nonjudicial officers receive immunity merely "because they are 'part of the judicial function.'" *Antoine*, 508 U.S. at 435 (quoting *Antoine v. Byers & Anderson, Inc.*, 950 F.2d 1471, 1476 (9th Cir. 1991)).

Judges themselves, the Court explained, receive absolute judicial immunity only because "the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability." *Id.* The applicability of judicial immunity thus depends on whether there "has been 'performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights.'" *Id.* at 435–36 (quoting *Burns v. Reed*, 500 U.S. 478, 500 (1991) (Scalia, J., concurring in the judgment in part and dissenting in part)).

"When judicial immunity is extended to officials other than judges, it is because their judgments are 'functionally comparable' to those of judges—that is, because they, too, 'exercise a discretionary judgment' as a part of their function." *Id.* at 436 (brackets omitted) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 423 n.20 (1976)). "In determining which officials perform functions that might justify a full exemption from liability," we undertake "a considered inquiry into the immunity historically accorded the relevant

official at common law and the interests behind it." *Id.* at 432 (quoting *Butz v. Economou*, 438 U.S. 478, 508 (1978)).

In *Castillo*, we reconsidered the application of quasi-judicial immunity to bankruptcy trustees in light of *Antoine*. First, we considered the historical roles of bankruptcy officers and observed that "the common-law and nineteenth century antecedents of the modern bankruptcy trustee were entrusted with both administrative and adjudicatory functions." *Castillo*, 297 F.3d at 950. The administrative functions included "collecting, liquidating, and distributing the debtor's property to creditors," while the adjudicatory functions included "seizing property, summoning persons to appear before them, and committing people to prison." *Id.* at 949. We concluded that "immunity would have extended to the performance of these common-law adjudicatory functions." *Id.* at 950.

We then considered a trustee's role under the current Bankruptcy Code. At a high level, the trustee gathers and liquidates estate property (for which she is accountable), ensures that the debtor performs his obligations, investigates the debtor's finances, and reviews the proofs of claim. *Id.* If appropriate, the trustee opposes the debtor's discharge, provides relevant information to parties-in-interest, and, by court order, operates the business on a short-term basis. *Id.* The trustee also prepares the final report and an accounting for the estate's administration. *Id.* at 950–51. *See generally* 11 U.S.C. § 704 (setting forth the trustee's duties). We thus characterized the modern bankruptcy trustee as "a hybrid official" who, "like the common-law bankruptcy judicial officers," has "many legal, adjudicative, clerical, financial, administrative, and business functions" that can loosely be categorized as either "adjudicatory" or "administrative." *Castillo*, 297 F.3d at 951.

To determine whether a bankruptcy trustee is entitled to quasi-judicial immunity, "we must examine the particular function . . . at issue." *Id.* When performing this inquiry, courts should bear in mind that the Supreme Court has "been 'quite sparing' in [its] recognition of absolute immunity and [has] refused to extend it any 'further than its justification would warrant.'" *Burns*, 500 U.S. at 487 (citation omitted) (first quoting *Forrester v. White*, 484 U.S. 219, 224 (1988); and then quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 811 (1982)). Crucially, quasi-judicial immunity attaches only to functions that are analogous to "the authoritative adjudication of private rights to the bankruptcy estate." *Castillo*, 297 F.3d at 951.

In *Castillo*, the actions at issue were "the scheduling and giving of notice of hearings," both of which, we held, "are part of the judicial function of managing the bankruptcy court's docket in the resolution of disputes" as they could not be disentangled from it. *Id.* Because "[t]his function is unquestionably discretionary in nature"—notwithstanding that the component acts might "appear ministerial" if "taken out of context"—the trustee was entitled to quasi-judicial immunity. *Id.* at 951–53.

In *Burton*, we held that the function at issue was *not* adjudicative in nature. The debtor and his counsel sued a creditor's attorney for violating the automatic stay. *Burton*, 862 F.3d at 745–46. The debtor had deposited funds from a personal injury settlement with the bankruptcy trustee, and the creditor's attorney pressured the debtor to interplead the funds in a parallel state court proceeding because it "would resolve the interests of the lien holders more quickly than the bankruptcy court." *Id.* at 743. We held that the creditor's attorney, despite working with the state judge to have the funds interpled, was not entitled to quasi-judicial immunity.

*Id.* at 749. We reasoned that historically, absolute immunity for attorneys has been limited to "action[s] that only a legal representative of the government could take," such as attorneys serving as prosecutors and, in certain contexts, bankruptcy trustees. *Id.* at 748 (quoting *Stapley v. Pestalozzi*, 733 F.3d 804, 812 (9th Cir. 2013)). More relevant here, the functions that the creditor's attorney had performed—"private advocacy or attempted debt collection"—were "distinct from the judicial function." *Id.* at 749.

## 2.

Derived immunity arises out of the well-established practice "by which trustees seek instructions from the court, given upon notice to creditors and interested parties, as to matters which involve difficult questions of judgment." *Mosser*, 341 U.S. at 274. We first recognized the doctrine in *Lonneker Farms*. Citing to a Fifth Circuit case in which a bankruptcy trustee was "entitled to derived immunity" because he "sought and obtained court approval of his actions," *Boullion v. McClanahan*, 639 F.2d 213, 214 (5th Cir. Unit A Mar. 1981) (per curiam), we held that derived immunity protects a trustee who "act[s] under the authority of the bankruptcy judge," *Lonneker Farms*, 804 F.2d at 1097. To hold otherwise would "damage . . . the orderly administration of justice in the federal court system" by allowing an improper collateral appeal of the bankruptcy court's order. *Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1392 (9th Cir. 1987).

In *Bennett*, we expanded on the doctrine. We explained that a bankruptcy trustee "has a duty to preserve the assets of an estate and must 'exercise that measure of care and diligence that an ordinarily prudent person would exercise

under similar circumstances.'"  *Bennett*, 892 F.2d at 823 (quoting *In re Rigden*, 795 F.2d 727, 730 (9th Cir. 1986)). While a trustee may be liable for even negligent violations of this duty, we identified "certain standards" that, if met, will immunize her.  *Id.*

As catalogued above, a trustee claiming derived immunity must meet four requirements: (1) her acts must have been within the scope of her authority; (2) the interested parties must have had notice of the proposed acts; (3) she must have candidly disclosed the proposed acts to the bankruptcy court; and (4) the bankruptcy court must have approved the acts.  *See Harris*, 590 F.3d at 742.

First, "[t]he act must be within the trustee's official duties."  *Bennett*, 892 F.2d at 823.  "The powers and duties of a bankruptcy trustee are extensive" under the Bankruptcy Code and include "wide-ranging management authority over the debtor."  *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352 (1985).  Given this significant grant of authority, a trustee must take care not to exceed it. For example, in *Leonard v. Vrooman*, 383 F.2d 556 (9th Cir. 1967), an overly zealous trustee broke into and seized real property belonging to a third party, mistakenly believing it belonged to the debtor, and refused to relinquish the property after discovering that the third party had acquired and recorded title prior to the bankruptcy.  *See id.* at 560.  We acknowledged that the Bankruptcy Code obliged the trustee to gather the debtor's property and that the trustee's "failure to act diligently in this respect could result in a claim against him."  *Id.*  However, we explained that the trustee must discharge the duty in an authorized way, and the proper procedure would have been to obtain a turnover order.  *See id.* at 560–61.

Even if the trustee acts within the scope of her authority, she must "give notice . . . of a proposed action" to the debtor, creditors, and other interested parties. *Bennett*, 892 F.2d at 823. Notice protects these parties' due process rights by providing them an opportunity to object and have the bankruptcy court consider their concerns before granting any relief to the trustee. *See Mosser*, 341 U.S. at 274 (explaining that notice to interested creditors permits them "to show cause why [the proposed action] should not [be] openly authorized"). In *Cochise College Park*, we held that the bankruptcy trustee was "personally responsible" for unreasonably using creditors' funds that "never became property of the estate" to pay for estate administration. 703 F.2d at 1356–57. Although the bankruptcy court had authorized the payments in a series of ex parte orders, the orders were "insufficient to relieve the trustee of personal liability" because "no notice of these transactions was given to the [creditors], despite their obvious status as 'interested parties.'" *Id.* at 1357 n.25.

Notice to interested parties is still not enough. "The trustee's disclosure to the court must be candid." *Bennett*, 892 F.2d at 823. To satisfy the candor requirement, the trustee's representation must be both truthful and complete, apprising the bankruptcy court of all material facts that would bear on the court's decision, including facts that weigh against the proposed action. For example, in *Mosser*, the trustee hired two employees to assist with the debtors' reorganization. 341 U.S. at 268–69. Although the trustee discussed hiring these "indispensable" employees with the district court, he "did not disclose the critical fact that he was employing them on terms which permitted their trading in the . . . securities" of the debtors' subsidiaries. *Id.* at 274. Because this undisclosed information was material, the

trustee was personally liable for any losses from the conflicts of interest. *See id.* ("It is hardly probable that a candid disclosure to creditors, to the court, and to interested parties would have resulted in instructions to have pursued this course; but, had it been authorized, at least the assenting creditors might have found themselves estopped to question the transaction.").

Lastly, for derived immunity to attach, the trustee must "obtain court approval." *Bennett*, 892 F.2d at 823. Derived immunity, as the name suggests, reflects the idea that the trustee "share[s] the judge's absolute immunity" to avoid "the unfairness of sparing the judge who gives an order while punishing the [trustee] who obeys it." *Kermit Constr. Corp. v. Banco Credito y Ahorro Ponceno*, 547 F.2d 1, 3 (1st Cir. 1976). Without the court's approval, there is no such unfairness in allowing the trustee to face liability for her actions.

### 3.

In concluding that "immunity covers claims pertaining to 'ordinary negligence'" but not "claims involving gross negligence or willful misconduct," the district court ultimately relied on *Continental Coin*, a bankruptcy court decision that attempted to reconcile our case law on bankruptcy trustee immunity, which has not always been a model of clarity. *See Cont'l Coin*, 380 B.R. at 11–15. However, *Continental Coin* conflated the two strands of immunity, *see id.* at 6 & n.8 (treating quasi-judicial immunity and derived immunity "interchangeably"), and applied an immunity standard that incorrectly turned on the trustee's degree of fault, *see id.* at 11.

In *Castillo*, we described the trustee's quasi-judicial immunity as "absolute." *See* 297 F.3d at 947 ("Absolute

judicial immunity is not reserved solely for judges, but extends to nonjudicial officers for 'all claims relating to the exercise of judicial functions.'" (quoting *Burns*, 500 U.S. at 499 (Scalia, J., concurring in the judgment in part and dissenting in part))).   That means that a trustee's quasi-judicial immunity insulates her "from charges of erroneous acts or irregular action, even when it is alleged that such action was driven by malicious or corrupt motives." *Id.*  A trustee's derived immunity is similarly "broad." *Bennett*, 892 F.2d at 823.  So long as a trustee acts "within the scope of [her] authority and pursuant to court order" after candid disclosure and notice, *id.*, her subjective intent is irrelevant, as is that of the bankruptcy judge who approved the action, *see Boullion*, 639 F.2d at 214 ("[Judicial] immunity is not lost even though 'the action (the judge) took was in error, [or] was done maliciously . . . .'" (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 (1978))).

*Continental Coin* expressed the concern, echoed here by amicus curiae, that exposing trustees to liability for negligence could discourage suitable persons from serving as bankruptcy trustees.  *See* 380 B.R. at 7 ("[N]o trustee in his right mind would regularly subject himself to personal liability for negligence or even to having to defend a lawsuit for such alleged behavior.").  There are two responses.  As a legal matter, the Supreme Court has suggested that negligent conduct is enough to impose liability on a trustee, *see Mosser*, 341 U.S. at 272, and we have squarely so held, *see Cochise Coll. Park*, 703 F.2d at 1357 n.26 (rejecting as a "misreading of . . . *Mosser*" the view that "a bankruptcy or reorganization trustee may be held personally liable for damages only for injuries arising from intentional—as opposed to negligent—conduct").  Under principles of stare

decisis, there is no reason to upset this longstanding principle.

As a practical matter, we doubt that subjecting trustees to liability for negligence will dissuade potential trustees from serving in that role. As we have explained, a trustee enjoys immunity for negligent and even intentional conduct in some instances. The broad scope of immunity, where it applies, ensures that trustees do not become "a lightning rod for harassing litigation aimed at judicial orders." *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1303 (9th Cir. 1989) (quoting *Kermit Constr.*, 547 F.2d at 3).

Even when a trustee does not have immunity for a particular action or inaction, she can invoke the "business judgment rule" as a defense to liability. *See Mosser*, 341 U.S. at 274 ("Courts are quite likely to protect trustees against heavy liabilities for disinterested mistakes in business judgment."); *Bennett*, 892 F.2d at 824 ("We have consistently held that liability will not be imposed for mistakes in business judgment."). Because a bankruptcy trustee "may not be expected to conduct a business according to the standards of the debtor," we accord deference to the trustee's business management decisions. *Bennett*, 892 F.2d at 824. If a trustee has "sound reasons" for a business decision, "[l]iability will not be imposed for the exercise of such judgment, absent negligence." *Sw. Media, Inc. v. Rau*, 708 F.2d 419, 425 (9th Cir. 1983).

A trustee can further limit her liability by filing regular reports of the estate's management, thereby placing on creditors "the burden of raising their objections." *Mosser*, 341 U.S. at 274–75; *see In re Cloobeck*, 788 F.3d 1243, 1247 (9th Cir. 2015) (Wallace, J., concurring) ("A party must object within a reasonable time or risk being deemed to have

consented to the action to which it objects."); *cf. In re Gregory*, 705 F.2d 1118, 1123 (9th Cir. 1983) ("When the holder of a large, unsecured claim . . . receives any notice from the bankruptcy court that its debtor has initiated bankruptcy proceedings, it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril."). Thus, if a trustee "account[s] at prompt intervals," *Mosser*, 341 U.S. at 274, and a creditor fails to timely object to the trustee's actions, then the creditor may be estopped from mounting a collateral attack.

And when a creditor brings factually or legally baseless claims against the trustee for her administration of the estate, the trustee can always seek sanctions, including "all or part of the reasonable attorney's fees and other expenses." Fed. R. Bankr. P. 9011(c)(4)(A)(iii); *see Law v. Siegel*, 571 U.S. 415, 427 (2014) ("[Rule 9011] authorizes the court to impose sanctions for bad-faith litigation conduct . . . ."). The prospect of sanctions should dissuade all but the most foolhardy of creditors from engaging in abusive litigation with the trustee over the estate's management.

## B.

Although Phillips's complaint contains some gratuitous allegations regarding Goldman's perceived failings, we understand her claims to be relatively modest in scope. She alleges that Goldman breached her duty to preserve estate assets by allowing the two real properties to deteriorate from Gilman's neglect. And she alleges that Goldman failed to safeguard estate property by not demanding that the tenants pay rent or that Gilman turn over the rental income he had already collected.

The complaint's allegations relate to a bankruptcy trustee's functions of gathering estate property, investigating the debtor's finances, and operating the debtor's business on a short-term basis. These functions are not analogous to or intertwined with "the authoritative adjudication of private rights to the bankruptcy estate." *Castillo*, 297 F.3d at 951. Although they affect the estate's assets and, indirectly, the total amount available for distribution to creditors, they do not determine how the assets will be divided among the creditors. Rather, these functions call upon the trustee to act as a property manager.

Therefore, we hold that Goldman is not entitled to quasi-judicial immunity from Phillips's claims. Both *Castillo* and *Burton* support this result. In *Castillo*, we described "activities such as collecting, liquidating, and distributing the debtor's property to creditors" as "administrative" in nature and distinguished them from "more traditional judicial activities." 297 F.3d at 949–50. In *Burton*, we similarly held that "attempted debt collection" is not adjudicative. 862 F.3d at 749. And our holding is consistent with pre-*Antoine* case law establishing that a trustee can be personally liable for inaction in the face of his duty to preserve estate assets. *See Rigden*, 795 F.2d at 730, 733.

We also conclude that, on the current record, Goldman is not entitled to derived immunity. Phillips alleges that Goldman made "no attempt . . . to obtain any orders to preserve the bankruptcy estate or recover moneys taken from it," and we discern no orders in the bankruptcy docket authorizing Goldman's inaction in that regard. On remand, Goldman is free to raise derived immunity as a defense if she believes she can make the necessary showing.

We reverse the district court's decision upholding immunity and remand for the bankruptcy court to consider Goldman's remaining arguments for dismissal. We decline Phillips's request to remand the case to a different bankruptcy judge, as we conclude that the facts do not justify such a measure. *See Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador*, 122 F.4th 825, 844 (9th Cir. 2024) (limiting reassignment to the "rare and extraordinary circumstances" where the judge "has exhibited personal bias" or it is otherwise necessary "to maintain the appearance of justice" (quoting *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1045 (9th Cir. 2015))).

**REVERSED and REMANDED.**